In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-1221

DAN YOUNG, JR.,

*Petitioner-Appellant*,

*v.*

JONATHAN R. WALLS, Warden,
Menard Correctional Center,†

*Respondent-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01 C 6027—**Charles P. Kocoras**, *Chief Judge*.

ARGUED SEPTEMBER 11, 2002—DECIDED NOVEMBER 22, 2002

Before POSNER, EASTERBROOK, and EVANS, *Circuit Judges*.

† Young's petition named as respondent the Director of the
Illinois Department of Corrections. We have amended the caption
to identify the proper respondent: the warden of the prison where
Young is confined. See *Hogan v. Hanks*, 97 F.3d 189 (7th Cir.
1996); Rule 2(a) of the Rules Governing Section 2254 Cases in
the United States District Courts. The caption has been further
modified in light of Circuit Rule 12(b): "Actions seeking habeas
corpus shall be designated 'Petitioner v. Custodian' and not
'United States ex rel. Petitioner v. Custodian.'"

EASTERBROOK, *Circuit Judge*.   Dan Young, whose IQ has been measured at 56, has slight comprehension of abstract concepts. He is also uncontrollably violent when left to his own devices and has accumulated a lengthy criminal record. The convictions now under review are for the rape and exceptionally brutal murder of Kathy Morgan. His detailed confession was corroborated by a confederate plus a match between Young's dental pattern and a bite mark on Morgan's body. He was sentenced to life imprisonment, which is essential to incapacitate Young (who appears to be undeterrable) and protect society. According to Young, however, his mental shortcomings prevent him from making effective confessions and require him to be freed, because he can't understand the legal significance of *Miranda* warnings. What is more, Young now contends that the drugs used to render him calm enough for trial spoiled the adjudication—and his counsel rendered ineffective assistance by not doing more to prevent a trial from occurring. The district court denied Young's petition under 28 U.S.C. §2254. See 2001 U.S. Dist. LEXIS 17618 (N.D. Ill. Oct. 25, 2001).

Before trial three psychiatrists examined Young. All three concluded that he was fit for trial—which is to say that he had the mental capacity to understand the charges and assist his lawyer in presenting a defense. See *Drope v. Missouri*, 420 U.S. 162, 171 (1975). In light of the unanimity, Young's lawyer did not request a formal fitness hearing under 725 ILCS 5/104-21(a) and 725 ILCS 5/104-11. Young's current lawyers say that this was incompetent assistance, because one of the reasons why Young was deemed fit to stand trial was that he was taking psychotropic medication. A timely hearing, according to current counsel, might have shown that the drugs interfered with rather than promoted Young's fitness. When Young made a similar claim on post-conviction review in Illinois, the state court held a hearing to consider ex-

actly this question. After receiving evidence the judge concluded, on the basis of uncontradicted psychiatric evidence, that Young was taking the drugs not because he was psychotic but to control his aggression. These drugs, the state court found, did not affect Young's cognitive function, and because Young had been taking them for two years by the time of trial any initial side effects such as drowsiness would have abated. Young's current lawyers do not contest these conclusions; instead they call them irrelevant, the work of hindsight. Only a hearing right before the trial began could generate *reliable* conclusions, counsel insist.

Like the district judge, we do not think that the state courts contradicted the Supreme Court of the United States or applied constitutional law unreasonably to the facts. See 28 U.S.C. §2254(d); *Woodford v. Visciotti*, No. 02-137 (U.S. Nov. 4, 2002); *Bell v. Cone*, 122 S. Ct. 1843 (2002). *Bell* disposes of the ineffective-assistance theory. Young wants to treat any decision by counsel not to file a particular motion as equivalent to abandonment, which would avoid the need to show prejudice. *Bell* rejected that approach. Thus we can assume for the sake of argument that counsel should have asked the judge to hold a hearing before trial; the omission was not prejudicial—that is, does not undermine confidence in the outcome, see *Strickland v. Washington*, 466 U.S. 668, 694 (1984)—given the findings made at the post-trial hearing. These findings are well supported by the record. See 28 U.S.C. §2254(e)(1).

A contemporaneous inquiry into competence is preferable to a belated one. *Pate v. Robinson*, 383 U.S. 375, 387 (1966); *Dusky v. United States*, 362 U.S. 402 (1960). But when a defendant's condition is stable, evidence adduced after trial allows a reliable reconstruction of the defendant's mental state at trial. *Pate*, 383 U.S. at 386-87; *Dusky*, 362 U.S. at 403. It was not unreasonable for the

Illinois courts to deem this such a situation. The post-trial record was based largely on the three mental examinations that preceded the trial, plus one fresh examination. Young's mental condition is chronic. There is no sign of deterioration or improvement. Young started taking the psychotropic drugs two years before trial, so his condition had stabilized and could be assessed reliably using both pre- and post-trial mental evaluations. The state judge found, with adequate record support, that Young's inappropriate behavior during trial (such as attacking his co-defendant, insulting the judge, and contorting his body on occasion) had a genesis other than the medication, which mitigated rather than aggravated his problems.

Young never argued in either state or federal court that he was unfit for trial because he was unable to comprehend the proceedings. That, coupled with the judicial conclusion that Young was fit to participate, undercuts his argument that the confession must be suppressed. For *Godinez v. Moran*, 509 U.S. 389 (1993), holds that any defendant competent to stand trial, and thus to waive or exercise rights *at* trial, also is competent to waive the right to counsel. Because a waiver of rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), is just a species of counsel waiver, a defendant competent to stand trial must be competent to confess. Never has the Supreme Court of the United States held that retarded suspects are unable to waive their right to counsel or incapable of giving voluntary confessions, so the state court's decision cannot be called "contrary to" a decision of the Supreme Court. See *Early v. Packer*, No. 01-1765 (U.S. Nov. 4, 2002); *Williams v. Taylor*, 529 U.S. 362 (2000). And *Godinez* makes it awfully hard to see how the state court's decision might be an unreasonable application of constitutional law unless the psychotropic drugs (not given until after the confession) were essential to competence. Yet, as we have stressed, the mental professionals agreed

that the drugs did not affect Young's cognition, and it is cognitive shortcomings that form the basis of his position with respect to the confession.

Quite apart from the effect of *Godinez* is the finding of historical fact, made by the trial judge—and presumed correct under §2254(e)(1)—that Young understood the *Miranda* warnings. The police who took the confession testified that they simplified the warnings for Young and that he appeared to understand the advice. Before the confession was signed, an assistant state's attorney gave Young another set of amplified warnings and concluded that he understood his entitlement to stop the questioning and have counsel. The psychiatrists agreed that this degree of comprehension is possible for someone with a low IQ, if the warnings are made sufficiently simple and the suspect's responses are elicited with care.

Young's lawyers reply that comprehension of *Miranda* and the consequences of waiver requires abstract intelligence. Yet Young cannot count backward. He does not know which direction is "east" and thus cannot tell where the sun appears. Asked to name the Presidents since 1950, he answered "Washington" and "Lincoln." He knows that winter means cold and snow but cannot explain what "seasons" are. He cannot describe a ship (which of course he does not encounter in daily life). His command of analogies and categories is poor; he can't explain in what respects a dog is similar to a lion. But he knows that a "PD" in Illinois is a public defender, and he knows what a trial is for even though he cannot describe how the jury works. In other words, he has concrete knowledge suited to his occupation as a career criminal, but poor verbal skills, a low fund of general knowledge, and an inability to reason (or talk) abstractly.

Do these deficiencies mean that a person such as Young is unable to confess to a crime? If entitlement to talk to

the police depends on capacity to reason abstractly about the legal system and understand the long-term consequences of one's acts (such as the effect that a confession will have at trial), then the answer must be yes. See Morgan Cloud, George B. Shepherd, Alison Nodvin Barkoff & Justin V. Shur, *Words Without Meaning: The Constitution, Confessions, and Mentally Retarded Suspects*, 69 U. Chi. L. Rev. 495 (2002) (concluding that retarded suspects do not understand the legal significance of *Miranda* warnings or the consequences of confessions). Yet *Miranda* is not about abstract understanding, nor does the Constitution protect suspects against confessions that are made for reasons other than official coercion. See *Colorado v. Connelly*, 479 U.S. 157 (1986) (a confession given by a suspect who believed that God had instructed him to confess, and who therefore did not care about the legal system's agents such as lawyers, is nonetheless admissible). Recall the point of the warnings: to protect the suspect's privilege against compulsory self-incrimination. *Miranda* scuttled the rationale of *Escobedo v. Illinois*, 378 U.S. 478 (1964), which had relied on the sixth amendment. There is scant risk that Young was being compelled to be a witness against himself; he confessed because he wanted to talk. This may have been an uninformed, self-destructive decision, but it was not the result of the third degree. Custodial interrogation played no role; the psychiatrists believe that Young would have confessed in any setting. *Miranda* is simply beside the point for persons who confess *because they don't think that their words will harm them*—the position in which, according to his lawyers, Young found himself following his arrest. Young had enough awareness (the state court found) to understand what a lawyer is and his entitlement to direct the police to stop asking questions. This is all the fifth amendment demands. See *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

That Young may have been unable to understand why a lawyer's assistance might be important, as one of the psychiatrists concluded, is not legally material. Suspects need not know how legal skills could be employed to best advantage. That's asking too much and is too far removed from the goal that *Miranda* warnings are designed to implement. It is sufficient if the suspect has enough mental capacity to make decisions in daily life. An infant, or a person so incompetent that a guardian had been appointed, would be a different matter; the legal system generally does not allow such persons to form contracts or otherwise bind themselves. Young, though, is among the great majority of adults who can live independent lives, and as part of those lives can make choices with effects both good and bad.

Perhaps the legal system should adopt additional rules to deal with suspects of limited intellectual abilities. But they are not now in place, nor has the Supreme Court concluded that rules of this kind are to be found in the Constitution. We have held that even teenagers can confess, and without the supervision or assistance of a supportive adult such as a parent. See, e.g., *Hardaway v. Young*, 302 F.3d 757 (7th Cir. 2002) (collecting cases). No decision holds that retarded suspects are unable to confess because they can't comprehend *Miranda* warnings—and the absence of such a decision by the Supreme Court means that the state court's resolution was not contrary to, or an unreasonable application of, the Supreme Court's body of doctrine. (The reader will note that we have not cited any decisions by the United States Courts of Appeals and state supreme courts, because under §2254(d) only the decisions of the Supreme Court of the United States matter on collateral attack of a state court's judgment. But we add that, as far as we are aware, no court of appeals or state supreme court has adopted a categorical rule that retarded suspects can-

not understand their options well enough to give valid confessions.)

Independent of *Miranda* and the concept of waiver, suspects have a right to be free of coercion. At trial Young contended inconsistently that the police had treated him well and that they had threatened to beat him. This raised a possibility that the confession was involuntary, a subject resolved adversely to Young by both the judge and the jury. Young does not contend that the state courts erred in handling his contention that the confession was involuntary. As for the relation between *Miranda* and low IQ: new rules must be put in place by statutes, rules, or decisions on direct appeal, not via collateral attack.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*