# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1739

ALAN L. MATHENEY,

*Petitioner-Appellant,*

v.

RONDLE ANDERSON,

*Respondent-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 98 C 183—**Allen Sharp**, *Judge.*

———————

ARGUED DECEMBER 11, 2003—DECIDED JULY 29, 2004

———————

Before BAUER, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* In April of 1990, an Indiana state
court jury convicted Alan Matheney of murder and bur-
glary. Agreeing with the jury's recommendation, the trial
judge sentenced Matheney to death. Matheney exhausted
his state-court direct appeals and post-conviction proceed-
ings. Moving to the federal courts on July 11, 1998, he filed
a petition for a writ of habeas corpus, which included a
claim that he had been incompetent to stand trial. On July
30, 1999, the district court, without a hearing but in a de-
tailed examination of the extensive record, found, among
other things, that Matheney was competent to stand trial
and denied his habeas petition. On appeal, this court re-

manded the case to the district court for an evidentiary hearing on issues related to Matheney's incompetency claim.

On November 27, 2002, the district court, in compliance with our directions, held an evidentiary hearing addressing the same matters decided in its Memorandum and Order of 1999, to wit: (1) whether Matheney was competent to stand trial in 1990; (2) whether Matheney's attorneys at his trial were ineffective because they did not demand a competency hearing prior to the trial; and (3) whether the state trial court was obligated to hold a competency hearing sua sponte.

As before, the district court considered the totality of the evidence that pertained to these issues from the trial record, the post-conviction proceedings record, and the federal habeas record, along with some additional evidence submitted by the parties.

It again concluded that Matheney had been competent to stand trial in 1990. Hence, the district court reasoned, his attorneys did not provide ineffective assistance at his trial, and the trial court did not err in failing to sua sponte consider Matheney's competency.

Matheney appeals only the district court's determinations as to his competency and his attorneys' effectiveness. For the reasons stated herein, we affirm the district court's decision to deny the writ.

## I. History

The factual and procedural background of this case has been thoroughly laid out in prior opinions. *See Matheney v. Anderson*, 253 F.3d 1025 (7th Cir. 2001) ("*Matheney IV*"); *Matheney v. Anderson*, 60 F. Supp. 2d 846 (N.D. Ind. 1999) ("*Matheney III*"); *Matheney v. Indiana*, 688 N.E.2d 883 (Ind. 1997) ("*Matheney II*"); *Matheney v. Indiana*, 583 N.E.2d 1202 (Ind. 1992) ("*Matheney I*"). It will suffice for present

purposes to supply only a brief factual introduction to the relevant issues and refer to prior treatments of the case as necessary.

On March 4, 1989, Matheney took advantage of an eight-hour pass from an Indiana state prison to break into the home of his ex-wife, chase her outside, and brutally bludgeon her to death with a shotgun. Faced with overwhelming evidence linking Matheney to the crimes, Matheney's trial counsel admitted in the first line of his opening statement that Matheney indeed performed this horrific act and subsequently presented the legal defense of insanity. This defense strategy ultimately proved to be unsuccessful.

Shortly after his indictment, his original counsel requested the evaluation of Matheney by court-appointed psychiatrists for the purpose of determining Matheney's competency to stand trial *and* his mental state at the time of the offense. The incompetency claim and the insanity defense were both premised on Matheney's unique understanding of the events of his life. Matheney was in prison at the time of the murder because he had kidnaped his children and battered his ex-wife. Rather than attributing his imprisonment to his own actions, Matheney blamed a conspiracy between his ex-wife and a prosecutor, whom he believed were having an affair. In preparing for trial (and at his post-conviction proceedings), Matheney insisted that the focus of his defense should be to expose this conspiracy and thereby—by Matheney's reasoning—excuse his crimes.

The defense's early request for a competency examination notwithstanding, the trial court did not order the doctors to address Matheney's competency to stand trial. So, the court-appointed doctors, Dr. Batacan and Dr. Berkson, made no explicit competency findings in their written reports on Matheney's sanity. Instead, the doctors limited their inquiries into whether Matheney was sane under Indiana law at the time of his crimes. The issue of competency was not raised by defense counsel after the initial motion.

Competency to stand trial, however, was addressed five years later by the Indiana trial court in the post-conviction review of Matheney's conviction. A lengthy evidentiary hearing was conducted. The hearing included an ex parte examination of Matheney's counsel by the magistrate, testimony by Matheney himself, and expert testimony.

Along with many other issues, the question of Matheney's competency to stand trial in 1990 was fully reviewed in the trial court's post-conviction proceeding. It was argued that Matheney received ineffective assistance of counsel because his attorneys failed to secure a competency determination prior to his trial. However, in a seventy-nine page "Findings of Fact and Conclusions of Law," entered on April 10, 1995, the post-conviction magistrate and judge found to the contrary. We quote extensively from that document:

> **3.08** *Petitioner's Allegation*: The petitioner was denied the effective assistance of trial and appellate counsel because counsel failed to notify the court that the petitioner was incompetent to stand trial and was incompetent to proceed on direct appeal. [¶ 9(C)(6).]
>
> *Conclusion*: The petitioner was competent.
>
> The petitioner asserts that he was incompetent at the time of trial and appeal. We note that counsel at the hearing on the petition for post-conviction relief attempted to halt the post-conviction proceedings because of their stated belief that the petitioner remains incompetent. For the reasons discussed below, it is the conclusion of this court that the petitioner is, and always has been, competent.
>
> The petitioner raised the affirmative defense of mental disease or defect at trial. He was examined by a number of mental health professionals who testified at trial. The petitioner's mental condition was no secret from either the trial court or the jury. The decision to raise the affirmative defense was made by the trial attorney who also acted as

appellate counsel. Counsel sincerely believed (and continues to believe) that the petitioner had a mental illness. The affirmative defense was pursued at trial for this reason and because part of the petitioner's trial strategy regarding the defense took into account the evidentiary advantage of presenting testimony from the petitioner through third parties without putting him personally on the witness stand. The petitioner was consulted on this strategy and agreed to it.

One thing about the petitioner seems very clear. He is one of the most difficult clients that any lawyer could be obliged to represent. From virtually the day the case was filed, the petitioner has routinely papered the courts with *pro se* pleadings that have perhaps doubled the volume of the record. They have kept his lawyers scurrying to deal with the collateral problems those pleadings create. The previously cited filing of the *pro se* motion for change of venue from the county is but one example. As trial counsel has implied, working with the petitioner requires a great deal of patience.

What is the petitioner's problem? First and foremost, he is intensely and narrowly focused on the belief that his ex-wife and the prosecuting attorney in St. Joseph County were having an affair. He believes that he was imprisoned prior to the murder as part of a conspiracy between the putative lovers to keep him out of the way. And finally, he also believes that his capital prosecution for murder was an extension of that conspiracy because the prosecuting attorney wanted to forever silence the petitioner about the affair. The petitioner is so narrowly focused on this alleged conspiracy that he sees the actions of others, including those of the trial court and his own attorneys, as extensions of the conspiracy to keep the affair from being litigated in the courts. He believes that the affair is the only matter worth litigating even now and he has little patience for those who

suggest that the affair is irrelevant to the question of whether or not he murdered his ex-wife.

The attorneys for the petitioner at trial, on appeal, and in these proceedings have all had trouble communicating with the petitioner because of his reaction to those he feels are not giving sufficient attention to the conspiracy issue. As appellate counsel tells it, one needs to let the petitioner talk on and on about the things he feels are important before other issues can be discussed. Communication is possible, however, if not efficient. Most significantly, counsel has stated that the petitioner was substantively involved in the trial process even if he wasn't as helpful as another client might have been.

The petitioner alleges that he was and remains incompetent. "Competency" as used here means the ability to understand the nature of the proceedings and assist in the preparation of a defense. It is the conclusion of this court that the petitioner has always been competent because: (1) he understood the nature of the proceedings at trial, on appeal, and in the petition for post-conviction relief; and, (2) he was able to assist in the preparation of his defense.

The petitioner understood the nature of the proceedings at, on appeal, and in the petition for post-conviction trial relief. It is very clear from his own pleadings that he understood that the purpose of the trial was to adjudge him innocent or guilty of the murder of his ex-wife. He also understood that one issue in the trial court was whether he should be put to death himself for that murder. He understood the respective roles of the prosecuting attorneys, defense attorneys and trial court judges at trial. Likewise, he recognized the purpose of the appeal and the mechanisms that were a part of it. The repeated *pro se* criticisms of the attorneys, the

courts, and the rulings on the admissibility of evidence, all are in themselves sufficient to support the conclusion that the petitioner has always had a very clear understanding of the nature of the proceedings even if he did not agree with others' opinions of what should be presented in those proceedings.

The petitioner was able to assist in the preparation of his defense. The one trial attorney who had the best rapport with the petitioner was the same one who represented the petitioner on appeal. He found the petitioner frustrating, stubborn and decidedly single-minded. It required extraordinary patience to deal with [the] petitioner. But, the petitioner was able to provide counsel with the details of everything that preceded and followed the murder, even if he did not describe the beating death itself. There is no evidence to suggest that the petitioner was unable to assist trial counsel.

Does the petitioner have a mental illness? The experts disagree. In short, it is sufficient to say that the petitioner has an obsession or delusional way of thinking that some doctors believe is so significant that it rises to the level of a paranoid personality disorder. This, of course, was known at the time of trial to both the judge and the jury through the doctors' testimony.

After trial and appeal, a psychologist examined the petitioner in preparation for the hearing on the petition for postconviction relief. He reported an opinion that the petitioner was unable to assist post-conviction counsel in the prosecution of the petition because he could not "rationally discuss his case, nor . . . manage sufficient distance from his delusional system to appreciate the possibility that he might stand to benefit from perspectives other than his own." The doctor who testified at trial on behalf of the petitioner agreed. We do not. The petitioner's obsession, whether factual or delu-

sional, has always made it difficult to work with him, but it has not made it impossible. This court's conclusion that the petitioner was and remains competent in the legal sense makes it unnecessary to explain our further conclusion that competency of the petitioner was not required before the appeal or petition for postconviction relief could be resolved.

(A.R. 11; Exh. C at 51-55) (endnotes omitted).

The Indiana Supreme Court affirmed the lower court's determination of Matheney's competency to stand trial: "Given the psychiatrists' determinations before trial, trial counsels' own opinions of Matheney's competency, and Dr. Berkson's earlier determination of Matheney's competency, trial counsel were not ineffective for failing to follow up their request for a determination of competency with a formal motion for a hearing on Matheney's competency." *Matheney II*, 688 N.E.2d at 899.[1] Thus, the Indiana courts, in adjudicating the effectiveness of Matheney's state trial and appellate counsel, directly addressed and determined Matheney's competency to proceed at trial.

Matheney then brought a federal habeas claim under 28 U.S.C. § 2254 in the Northern District of Indiana. That court denied Matheney's request for an evidentiary hearing on his competency, but then conducted a lengthy de novo

---

[1] The post-conviction trial court also found Matheney to be competent to participate in the post-conviction proceedings: "while the petitioner's character has certainly posed a formidable challenge to his attorneys and made a difficult job even more difficult, by his testimony, we do not find that there is sufficient evidence from which this Court can conclude that he has been unable to assist in the preparation of the presentation of the issues on his petition for post-conviction relief." (S.R. Vol. 21 at 1361.) The Indiana Supreme Court upheld this determination. *Matheney II*, 688 N.E.2d at 893.

review of the "massive" record. The district court ultimately made its findings:

> On the basis of all of the facts stated above, this court finds that Matheney was competent to stand trial under the *Dusky* standard. He understood the facts of the situation and he understood the consequences of trial and sentencing. Additionally, he provided some assistance to his counsel, perhaps not as much as they would choose, but not completely unhelpful. Importantly, none of his counsel, including the very experienced lead counsel, felt that he was incompetent. This court does not doubt that these very able lawyers would have raised the incompetence issue had it been appropriate. Although this court is well aware of Mr. Matheney's beliefs as to the alleged relationship between his former wife and the prosecutor of St. Joseph County, this court does not find that those beliefs so impeded Matheney's appreciation of his situation as to render him incompetent to stand trial. Thus, his due process right to be tried as a competent individual was not violated. . . . As Matheney was competent, his attorneys failure to raise the issue did not prejudice him and thus was not violative of his Sixth Amendment rights to effective assistance of counsel.

*Matheney III*, 60 F. Supp. 2d at 862-63.

In *Matheney IV*, we unfortunately did not take note of the post-conviction trial court's lengthy evidentiary hearing and extensive "Findings of Fact and Conclusions of Law" when we observed that the Indiana state courts had not properly considered Matheney's due process competency claim. *Matheney IV*, 253 F.3d at 1039. We mistakenly understood that the Indiana courts had refused to allow "the majority of Matheney's attempts to file pleadings" on the issue of competency. *Id.* Finally, we were wrong when we stated in *Matheney IV* that: "The federal district court concluded that

Matheney had not received a full and fair evidentiary hearing on his competency to stand trial from the Indiana state courts[.]" *Id.* Agreeing with this faulty premise, we remanded this case to the district court for a full evidentiary hearing on Matheney's competency at the time of the original trial.

On remand, the district court again considered all of the relevant evidence from the trial record, the post-conviction review record, and the federal habeas record. This evidence—much of it discussed in *Matheney IV*, *Matheney III*, and *Matheney II*—included medical evidence and opinions from all of the mental health experts, attorneys, and family members familiar with Matheney.

Also, the district court considered additional evidence submitted by the defense and prosecution. Matheney's counsel submitted a November 20, 2002 videotaped deposition of Dr. Helen Morrison, who had served as defense expert in the original trial, and who had also been deposed for the post-conviction proceedings in 1994. Dr. Morrison concluded in her deposition that Matheney was not competent to stand trial because he was "not able to rationally understand what he needed to do to provide a defense" and he did not "trust his attorney because [Matheney believed the attorney] was part of the court system" and therefore part of the conspiracy against him. Dr. Morrison based her conclusion on her assessment that Matheney suffered from paranoid delusions.

The state of Indiana submitted only a memorandum which noted that Matheney refused a psychological test on March 30, 1989 on the advice of counsel. After the evidentiary hearing on November 27, 2002, but before the district court's opinion denying habeas relief, Matheney himself filed two handwritten notes that discussed his current conspiracy theories. The district court considered these submissions as well.

After examining all of the evidence, the district judge concluded, as he had in *Matheney III*, that Matheney had been competent to stand trial in 1990. In part because he was competent, the district court also concluded that it was not ineffective assistance on the part of Matheney's trial attorneys not to pursue an incompetency claim at trial, nor was it error on the part of the trial judge to not consider Matheney's competency sua sponte. Matheney appeals the first two determinations—competency and ineffective assistance of counsel—but not the trial judge's failure to sua sponte broach the competency question.

## II.  Analysis

### A.  Standard of Review

Respondent Anderson asserts that 28 U.S.C. §§ 2254(d)(1) and (2) should guide our inquiry into Matheney's competency to stand trial. Section 2254(d) is part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a statutory scheme that is extremely deferential to state-court adjudications. It is clear that AEDPA is applicable to Matheney's habeas petition, as the petition was filed after April 24, 1996, the effective date of the statute. *See Lindh v. Murphy*, 521 U.S. 320 (1997). Matheney, however, insists that § 2254(d) deference is inappropriate under the particular circumstances of his case.

Matheney argues that: (1) the state courts did not reach the merits of the competency issue; (2) even if the state reached the merits, their findings should be ignored because this court, in *Matheney IV*, ordered the district court to conduct an evidentiary hearing; and (3) the Indiana court's post-conviction assessment of Matheney's competency was retrospective and therefore invalid. We will address each argument in turn.

First, succinctly put, as our summary of the Indiana post-conviction review process establishes, both the post-con-

viction trial court and the Indiana Supreme Court squarely addressed Matheney's competency claims and found him to be competent and determined that his trial counsel were not ineffective. Section 2254(d) deference applies.

Second, our case law is clear in holding that § 2254(d) "is applicable even though the district judge held an evidentiary hearing." *Pecoraro v. Walls*, 286 F.3d 439, 443 (7th Cir. 2002); *see also Valdez v. Cockrell*, 274 F.3d 941, 954 (5th Cir. 2001) *reh'g en banc denied*, 288 F.3d 702 (2002). *But see Miller v. Champion*, 161 F.3d 1249, 1254 (10th Cir. 1998). "The evidence obtained in such a hearing is quite likely to bear on the reasonableness of the state courts' adjudication . . . but we do not see why it should alter the *standard* of federal review." *Pecoraro*, 286 F.3d at 443.

Finally, we note that an after-the-fact state-court inquiry into competency to stand trial is subject to § 2254(d) deference, *Young v. Walls*, 311 F.3d 846, 848-49 (7th Cir. 2002), and the Indiana courts, in retrospectively analyzing the effectiveness of Matheney's trial and appellate counsel, concluded that Matheney had been competent to stand trial. Thus, each of Matheney's arguments fails, and we will apply § 2254(d) deference to the state court's determinations.

28 U.S.C. § 2254(d) reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

Under (d)(1), we follow the methodology established by the Supreme Court in Part II of Justice O'Connor's concurrence in *Williams v. Taylor*, 529 U.S. 362, 402-13 (2000), to determine whether the state court either came to a decision contrary to clearly established Supreme Court law or made an unreasonable application of clearly established Supreme Court law. *See Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003). Under (d)(2), "relief may be had where the petitioner can show by clear and convincing evidence that the state court's factual determinations were unreasonable." *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1) and explaining that courts refer to (e)(1) for the petitioner's burden of proof when that petitioner tries to make a (d)(2) showing of unreasonable state court factual determinations).

We review the district court's findings of fact for clear error and its conclusions of law or mixed questions of fact and law de novo. *Harding,* 300 F.3d at 827.

## B.  Competency to Stand Trial

"It is well-settled that a defendant may not be tried unless he has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . a rational as well as factual understanding of the proceedings against him.'" *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004) (quoting *Dusky v. United States*, 362 U.S. 402 (1960)); *see also Drope v. Missouri*, 420 U.S. 162, 171-72 (1975).

Matheney knew he had killed his ex-wife, knew the nature of the proceedings against him, and knew the death

penalty was a possible consequence of his actions. Furthermore, Matheney provided assistance to his trial counsel with facets of the defense. Matheney understood the judicial process, testified coherently about trial strategy under examination by a magistrate at the post-conviction hearing, took direction from counsel not to participate in mental health examinations unless authorized by them, restrained himself from any detrimental outbursts in court, and consulted with his attorneys concerning the factual considerations of his case. These findings of fact have overwhelming support in the record.

Matheney stubbornly insisted that his crimes should be excused because his ex-wife "deserved it" and that anyone who failed to see things this way must be in on the conspiracy against him. Matheney's unreasonable conspiracy theory—understandably rejected by his counsel as poor trial strategy—does not inexorably lead to a legal conclusion of incompetency. "[P]ersons of unquestioned competence have espoused ludicrous legal positions." *United States v. James*, 328 F.3d 953, 955 (7th Cir. 2003) (holding that the articulation of unusual legal beliefs does not imply incompetency). Matheney's trial attorneys were certainly frustrated by Matheney's recalcitrance, but this frustration is not enough to satisfy the legal definition of incompetency.

We note that Matheney's expert, Dr. Morrison, the only medical expert to directly express a legal conclusion on Matheney's competency to stand trial, concluded that Matheney was incompetent.[2] That testimony is certainly

---

[2] Other experts have testified as to Matheney's competency at other stages of his life. Dr. Berkson, one of the state-appointed mental health experts who evaluated Matheney's sanity at his original trial, testified that "he had examined Matheney two years [before the murder trial] in relation to a previous criminal matter and had found Matheney competent at that time." *Matheney II*,

(continued...)

not the only factor to be considered, however. *See Benefiel*, 357 F.3d at 660 (deferring to trial judge's assessment that petitioner was competent despite lone expert testimony in petitioner's favor). Dr. Morrison's expert opinion has been given due consideration. But other evidence has also been considered, including the testimony of the other experts, the testimony of Matheney's trial attorneys, the post-conviction testimony of Matheney himself, and the rest of the evidence in the record. *See United States v. Collins*, 949 F.2d 921, 926 (7th Cir. 1991) (noting that the statements of defendant's attorneys and the defendant himself are appropriate evidence for the trial judge to consider when evaluating competency).

We agree with the trial court, the Indiana Supreme Court, and the district court that Matheney was indeed competent to stand trial. Matheney was able to rationally consult with his attorneys about his crimes and the trial. He also had the ability to rationally understand the proceedings in which he was involved. He was able to assist in the preparation of his defense. Matheney's attorneys testified that Matheney was able to follow their directions, suggest witnesses, and discuss the case. Matheney himself testified at his post-conviction proceeding that he understood the legal issues presented by his counsel and that he agreed with some of the issues and disagreed with others. Even Dr. Morrison's deposition makes clear that Matheney was able to understand the role of his attorneys, that he understood the nature of the proceedings against him, and that he could factually describe the events of the day he killed his ex-wife.

---

[2] (...continued)
688 N.E.2d at 899. On the other hand, Dr. Smalldon, Matheney's expert witness at the post-conviction proceedings, testified that Matheney was legally incompetent at the time of the post-conviction proceedings.

Fundamentally, Matheney disagreed with his attorneys about the proper scope of his trial. He wanted to expose his perceived mistreatment at the hands of his ex-wife and a local prosecutor; he thought this would win jury sympathy and improve his chances of winning a favorable result (or, at least, a less unfavorable result, i.e., life in prison). His lawyers dismissed this strategy as irrelevant and pursued a defense of insanity (Matheney disagreed with this assessment of his mental well-being). His lawyers also wished to investigate and present significant evidence about Matheney's childhood and background. Matheney considered this information to be irrelevant to the case. This sort of disagreement between lawyers and a client does not amount to legal incompetency. The Indiana courts, in retrospectively deeming Matheney to have been competent at his trial, did not unreasonably apply established Supreme Court precedent.

## C.  Ineffective Assistance of Counsel

As noted above, because the state court in *Matheney II* found trial counsel to be effective in representing Matheney, we give this determination the deference due to it under 28 U.S.C. § 2254(d). *See United States v. Pierson*, 267 F.3d 544, 557 (7th Cir. 2001) (noting that the AEDPA provides for clear error review of state court *Strickland* adjudications because of the inherent "element of deference to counsel's choices in conducting the litigation" in combination with the "layer of respect" added by 28 U.S.C. § 2254(d)(1)).

In order to show ineffective assistance, Matheney must show both deficient performance by his trial attorneys and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show prejudice, Matheney must demonstrate a "reasonable probability that . . . the result of the proceeding would have been different" had his trial counsel raised the competency issue. *Strickland*, 466 U.S. at 694.

Because we agree with the state courts' finding that Matheney was competent to stand trial, it follows that the state courts did not err in concluding that Matheney's trial attorneys provided effective assistance. The post-conviction trial court and the Indiana Supreme Court did not unreasonably apply *Strickland*, or unreasonably determine the facts surrounding Matheney's representation before his original trial. Thus, even if we were to assume that the trial attorneys' performance was deficient in not demanding a contemporaneous competency examination and hearing, Matheney's ineffective assistance claim would fail on the prejudice prong.

### III. Conclusion

For the foregoing reasons, the district court's denial of Matheney's petition for habeas corpus relief under § 2254 is AFFIRMED.

ROVNER, *Circuit Judge*, dissenting. When Matheney was initially brought to trial for this crime, his lawyers sought a determination of his sanity and his competency. The court, however, ordered only a determination of his sanity, and none of the trial attorneys in the case appeared to even notice. In fact, examination of the record in this case reveals repeated instances in which attorneys and judges involved in that trial and his subsequent appeals blur the two, as if the determination that he was not legally insane at the time of the offense somehow also established that he was competent to stand trial.

As the majority points out, the competency issue eventually was addressed by the post-conviction court in its seventy-nine page "Findings of Facts and Conclusions of Law". The length resulted from the sheer quantity of issues raised by Matheney and his counsel in that proceeding. There were 96 in all. The portion addressing the competency issue spans only a few pages and in fact has been reproduced in its entirety in the majority's opinion. In it, the court considered Matheney's competence at trial and post-trial. The court properly identified the test as whether (1) Matheney understood the nature of the proceedings and (2) was able to assist in the preparation of his defense. I will discuss only the second factor, as the record sufficiently supports the finding that Matheney understood the nature of the proceedings. However, in determining that Matheney was able to assist in his defense, the post-conviction court rejected the only psychiatric testimony on that issue.

Dr. Morrison conducted a psychiatric examination of Matheney at the time of the trial (and in fact testified at trial that Matheney was not legally insane at the time of the offense because he could distinguish between right and wrong even though he could not conform his conduct.) Post-Conviction Record (PCR) at 1592. She diagnosed Matheney as suffering from paranoid disorder with psychosis delusion. She testified at length regarding details of that diagnosis as well as its impact on his thought processes and its progression over time. She further stated that in her professional opinion, Matheney would not be able to rationally consult with his lawyers. *Id.* at 1590. In so stating, she emphasized that the delusion he maintained interfered with any ability to look at the realistic facts of his case and what was necessary for the trial because everything to him remained a conspiracy. She further declared that over time she would expect the delusions to become even more fixed and to include more individuals, and that his attorneys would become part of the paranoid conspiracy. *Id.* at 1595-96.

Similarly, at the time of the post-conviction proceeding, Dr. Smalldon examined Matheney over a 2-day period, and submitted a 16-page report to the post-conviction court with his assessment. He concluded that Matheney's thinking was delusional, and his paranoid and persecutory ideas were fixed and rigid, completely refractory to logical or persuasive appeals. Dr. Smalldon further stated that one effect of that delusional worldview was his inability to rationally discuss his legal situation except in terms of his own rigid, delusional version of reality. Dr. Smalldon concluded that it was his professional opinion that Matheney was not competent to assist his post-conviction attorneys. In fact, Dr. Smalldon testified that Matheney's "willingness to work with me at all, not only to collaborate with formal testing, but even to engage with me in a discussion of this case was entirely contingent on my willingness to remain within his extremely cramped, claustrophobic view of his case and to refrain from challenging in any way his beliefs about the reality of his situation." *Id.* at 1260.

The post-conviction court provided very little reasoning in rejecting the only psychiatric testimony on the issue. The court stated that the one trial attorney who had the best rapport with Matheney and represented him on appeal found him frustrating and single-minded, but that Matheney was able to provide counsel with details of everything that preceded and followed the murder even if not the murder itself. That was the extent of the court's analysis of the second factor. The only other clue as to the court's reasoning appears in an earlier statement that "[m]ost significantly, counsel has stated that petitioner was substantively involved in the trial process even if he wasn't as helpful as another client might have been."

Under the AEDPA, the competency determination cannot stand if it is an unreasonable application of the law to the facts, or if it is based upon an unreasonable determination of the facts in light of the evidence presented to the state

court. 28 U.S.C. § 2254(d)(1) & (2); *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002); *Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003). "A state court decision that rests upon a determination of fact that lies against the clear weight of the evidence is, by definition, a decision 'so inadequately supported by the record' as to be arbitrary and therefore objectively unreasonable." *Ward*, 334 F.3d at 704, *quoting Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997). That standard is met here. A number of attorneys testified in this case. All of them provided testimony consistent with the diagnoses by Drs. Morrison and Smalldon.

Scott King was the lead counsel in the trial and appears to be the attorney referenced by the post-conviction court when determining that Matheney was able to assist in his defense. It is curious that King's testimony is the only evidence relied upon by the court in making the assessment of Matheney's competence at the time of the trial, particularly given the procedural history of this case. King was not appointed as counsel for Matheney until February 1990, and the trial took place a mere two months later. Nevertheless, the post-conviction court mentions only King— by description rather than by name—in finding competency, with no mention of the testimony provided by other counsel and the investigator who worked with Matheney for nearly a year more than King, from March 1989 through the trial.

Setting that aside for the moment, King's testimony provides no basis for rejecting the psychiatric testimony and concluding that Matheney was competent at the trial. King testified as to Matheney's persistent belief that his ex-wife and Barnes had been engaged in a conspiracy against him, and that if people outside the conspiracy learned of that conspiracy, they would find that his ex-wife's death was justified. King referred often to Matheney as being unhelpful in discussing the murder or the merits of the case, further stating that communication with Matheney was helpful in one way—in that his written and verbal state-

ments and inability to focus on matters outside that delusion provided support for the insanity defense. For instance, when asked whether Matheney was involved in devising the defense, King responded that his time spent with Matheney and reading what Matheney wrote was "a primary factor in the defense ultimately relied on [insanity] . . . . In terms of him being at all helpful, in terms of the merits of the allegations that he killed his wife, no." PCR at 1626. Similarly, when asked if Matheney was able to help in preparing for cross-examination, King noted that "in addition to lacking the typical objectivity, he also had a particular dent [sic] completely away from the case" focused on the conspiracy with Michael Barnes and his ex-wife. *Id.* at 1628. As a result, King testified that he was not helpful in preparing for cross-examination of state witnesses, but "[i]n the sense of between his writings and between his conduct, okay, supporting the use of the insanity defense, yeah, that was helpful to dictate that." That cannot support the post-conviction court's decision that Matheney could assist in his defense. It would be ironic indeed if a defendant's irrational behavior was interpreted as "assisting in his defense," thus rendering him competent to stand trial, because it gave counsel further evidence that he was insane. King recounts repeatedly Matheney's fixation on his delusion, and his inability to engage in discussions outside of that delusion. There is in fact little in King's testimony to support the court's conclusion that Matheney provided substantial assistance. Because the post-conviction court provided no details as to what testimony supported its finding of competency, it is difficult to address precisely the issue, but the testimony by King contains nothing that would support the court's dismissal of the psychiatric opinions. In fact, King testified on a number of occasions that he concurred with Dr. Morrison's assessment of Matheney. King's ultimate assessment of Matheney was that he was "singularly focused on the case as he defined it. Which was an ongoing saga of injustice promulgating from

his then incarceration. And that's his definition of the case." That portrayal meshes with the analyses of Dr. Morrison and Dr. Smalldon, and does not provide a basis for a finding of competency.

Moreover, the testimony of others involved in the trial and post-trial process further contradict the competency determination. Although the post-conviction court appeared to rely solely on King's testimony, other counsel including Charles Lahey also testified. He was counsel for Matheney from March 1989, nearly a year before King joined the defense team. Significantly, Lahey was the person whom King identified as the one he relied upon for insight into Matheney.

Lahey testified extensively about the inability to communicate with Matheney outside his delusion. For instance, Lahey testified that Matheney was actively planning his defense, but that defense was that his ex-wife "deserved it" because of the conspiracy between herself and Barnes, and that if the information would just be made public, then he would be vindicated. *Id.* at 1500. Lahey was unable to reason with him regarding the effectiveness of that defense. *Id.* Lahey stated that the decision to pursue the insanity defense was partly based on Matheney's inability to assist him in any defense other than the one upon which Matheney was focused. *Id.* at 1514.

One illustration of Matheney's singular focus on that defense was his insistence on a change of venue. Lahey argued against the motion with Matheney, based in part on his view that no jury in St. Joseph County had ever returned a capital punishment verdict, and that the judge in the case was as compassionate and reasonable a person as he could hope to have deciding the issue. *Id.* at 1528. Lahey felt that obtaining a change in venue to Lake County, which was one of only two counties that had returned capital punishment verdicts, was signing his own death warrant.

*Id.* Lahey was unable to reason with Matheney, however, who believed that the court system in St. Joseph County was controlled by Barnes, the prosecutor in that county, and that if he could be tried in an outlying county, the jury would hear what he had to say and decide that his actions were justified. *Id.* at 1520. Matheney ultimately succeeded in obtaining that change of venue. Lahey thus provides a concrete example of a defense decision by Matheney made based on his conspiracy delusion, impervious to the rational advice of his attorneys. Lahey further recounted that after his opposition to that motion, Matheney no longer trusted him, which is also consistent with Dr. Morrison's prediction that his attorneys would eventually be added to the conspiracy, perpetuating the delusion. Lahey concluded that Matheney was obsessed with his conspiracy defense, unable to work with him on any evidence other than along those lines, and was of no assistance whatsoever on the legitimate issues that existed in the case. *Id.* at 1543. Lahey appeared to be unfamiliar with the second prong of the competency test, stating that he did not label it as a problem of competence, because "maybe a psychiatrist would say that was because of his obsessive behavior but it wasn't because he was bouncing off the walls and didn't know what day it was or who I was," which of course relates to the first part of the test. *Id.* Lahey's testimony establishes that Matheney met the first factor of competency, that he understood the nature of the proceedings, but not the second one, that he was able to assist in his defense.

In addition, the record contained an affidavit from Steven Radde, a private investigator who worked for 10-13 months for the defense in the Matheney case, and who spent a considerable amount of time with Matheney. *Id.* at 2056. One of Radde's assignments was to locate and interview numerous witnesses brought to the defense team's attention by Matheney. Radde stated that in their conversations, Matheney

talked almost exclusively about proving there was a conspiracy between Lisa Bianco and Michael Barnes. Virtually all of the witnesses he requested we find were witnesses he said would help prove the conspiracy. He insisted that no other issues existed or mattered. I do not believe that Mr. Matheney ever understood that his theory of defense was irrational and unsympathetic. He insisted to the end that his conduct was justified, and that if the existence of the conspiracy against him was shown, the world would agree and he would be exonerated. Mr. Matheney was unable to assist me in my role as part of the defense team in any meaningful way. His assistance was limited to providing lengthy lists of names of people he believed would provide support for his own theory of how the case should be tried.

*Id.* at 2056-57.

Finally, the two attorneys for Matheney in post-conviction relief also testified that Matheney was unable to assist in his own defense. Yet the same post-conviction court held that he was competent in that proceeding as well. Steven Schutte—co-counsel with Jeffrey Merryman, Jr., testified as to Matheney's intractable fixation with the conspiracy, and the difficulties in trying to establish trust with Matheney. Schutte declared that his representation of Matheney was a constant balance between conducting the investigation that the case required and gaining enough trust with Matheney to proceed properly. *Id.* at 1334. Each step in one direction cost him in the other. *Id.* at 1334. Schutte testified that to try and establish trust with Matheney, he investigated some of Matheney's "conspiracy" claims. *Id.* at 1332. He further noted that Matheney had tens of thousands of pages of documents in his possession, but would not let his lawyers see all of them. Matheney decided when Schutte would view them and in what order, because Matheney feared that if Schutte viewed them out of order or out of context, Schutte might not understand the significance to his

conspiracy case. *Id.* at 1332-33. Trust issues impacted Schutte in other ways as well. For instance, Matheney signed some authorization and release forms early in the representation, but later refused to sign any more. *Id.* at 1333. Furthermore, Matheney acted on his own, filing, for example, a witness list that contained 206 names, and trying to control who Schutte contacted. Schutte's attempts to investigate the case properly by contacting relevant persons would have the problematic effect of adversely impacting his efforts at gaining Matheney's trust. He testified that Matheney was not competent.

His co-counsel, Merryman, represented Matheney for three years and also concluded that Matheney was unable to speak with him rationally about his case. Matheney refused to discuss with Merryman anything that he did not consider relevant to the his case, which he defined as the conspiracy between his ex-wife and the prosecutor. That included information about what Matheney did the day of the crime and his background, both of which related to his mental health. *Id.* at 1332-33. Along similar lines, Matheney would not tell them who his friends were and instructed his family not to cooperate with his lawyers. *Id.* at 1326. Merryman concluded by trying to provide some perspective on the problem. He stated that he had practiced law for nine years and had been a trial level Public Defender. As a result, he was familiar with difficult clients and clients who elected not to cooperate for various reasons; however, he had never litigated competency before. As he put it, he had

> never felt that [his] client's obstreperousness or diffi-culty ha[d] been a result of anything other than a free will of decisions. Mr. Matheney's case, I truly believe that he does not have the free will to make the deci-sions on whether or not to talk to me about any issues involved in this case. This is not a difficult client. I have

> had difficult clients before. This is a sick, client, unfortunately. He's a very, very sad man.

*Id.* at 1334-35.

The post-conviction court did not find the trial attorneys, post-conviction attorneys, or investigator incredible. The court did not weigh the testimony of the witnesses, determining that some were in a better position to assess Matheney's ability to assist in his defense. In fact, the court did not even identify with precision the testimony that convinced it to find competency despite the psychiatric testimony. Instead, the court merely focused on one attorney, King, without distinguishing or discrediting the testimony of the other persons who represented Matheney. King had, by far, the least amount of time on the case before trial—2 months—as opposed to the nearly 13 months that co-counsel had worked with Matheney, and a similar amount for the investigator who testified regarding competency. Moreover, King repeatedly testified that Matheney was unable to aid in his defense on the merits, and that he was helpful only in that his behavior cemented the notion that the best defense was insanity. King further testified, on multiple occasions, that he agreed with Dr. Morrison's assessment. Dr. Morrison testified to the post-conviction court that based on her examination of Matheney at trial, he was not able to rationally consult with his attorneys. The decision of the post-conviction court finding competency was an unreasonable application of the law to the facts, and was based upon an unreasonable determination of the facts in light of the evidence presented to the State court. Therefore, that decision cannot stand even under the more deferential AEDPA standard.

Although the majority relies primarily on the post-conviction court's finding in denying habeas relief, the other court decisions on the issue fare no better under scrutiny. First, as the majority points out, the Indiana Supreme

Court held that: "Given the psychiatrists' determinations before trial, trial counsel's own opinions of Matheney's competency, and Dr. Berkson's earlier determination of Matheney's competency, trial counsel were not ineffective for failing to follow up their request for a determination of competency with a formal motion for a hearing on Matheney's competency." *Matheney II*, 688 N.E.2d at 899. None of the psychiatrists in the trial, however, rendered any opinion regarding competency, and the Indiana Supreme Court provides no explanation as to why their opinions regarding whether he was legally insane at the time of the crime should impact the determination of whether he was presently able to assist in his defense. This is especially true considering that at least two of those psychiatrists ultimately recognized a mental illness, paranoid personality disorder, and the other did not only because he astonishingly believed that hallucinations were a necessary symptom of every mental illness. Moreover, the determination by Dr. Berkson two years prior in an unrelated criminal proceeding that he was competent provides no support for a decision to forego the competency determination in this trial. That earlier determination reflected concerns at that time as well about his competency. In fact, an attorney who worked with Matheney at that time wrote to the St. Joseph Probation department prior to Matheney's sentencing, expressing his opinion that Matheney's personality had deteriorated "since and due to his incarceration." PCR at 2068. By that deterioration, he:

> meant that Alan had become less rational than he had been in the months before his incarceration. His questioning of me was less relevant to his specific legal problems the more I saw him, and he seemed to become increasingly unable to focus on the real issues in his legal difficulties. He had also become obsessed with the wrongs he perceived Lisa Bianco was perpetrating on him.

*Id.* at 2069. Considering that the mental illness diagnosed by Dr. Morrison at trial was one that results in progressive deterioration, that earlier question of competence should have cautioned his trial attorneys as to the need for a competency determination, rather than absolving them of that issue as the Indiana Supreme Court held. Finally, and perhaps most tellingly, his attorneys did not determine that a competency determination was unnecessary. They determined that it was necessary, and sought it from the court. When the court failed to instruct the psychiatrists to render an opinion on competency, however, they failed to follow up and obtain that opinion. Instead, they appeared to operate from the mistaken belief that the decision regarding Matheney's legal sanity was dispositive of the competency issue. Those are two very different, unrelated inquiries. Moreover, even in their subsequent testimony, these attorneys indicated a fundamental misunderstanding of the two prongs of the competency determination, believing that Matheney was competent if he understood the nature of the proceedings even though repeatedly also testifying that he could provide no assistance whatsoever on the legitimate issues that existed in the case because he was singularly focused on the conspiracy delusion. The Indiana Supreme Court accepted those legal conclusions as evidence of his competence, without addressing that their testimony in fact established that the second part of the competency test was not met. The record demonstrates that Matheney's attorneys simply "dropped the ball" on the competency issue, failing to pursue it even though they had already raised the necessity of a competence determination with the trial court. The Indiana Supreme Court's decision is unsupported by the record, and an objectively unreasonable application of the law.

Finally, the district court's decision cannot support the majority's holding in this case. In determining that Matheney was competent, the district court rejected Dr.

Morrison's testimony as not addressing the "accurate test of competency." Dist. Ct. 2/18/03 Order at 35. According to the district court, Dr. Morrison opined that the delusions rendered Matheney incapable of rationally assisting in his defense. The court then stated: "However, the test does not require that a defendant be able to rationally *assist* in his defense, just that he possess a present ability to *consult* with counsel with a reasonable degree of rational understanding." *Id.* at 36. That seems a meaningless distinction in that it is difficult to conceive of a situation in which a defendant can consult with rational understanding but cannot assist in his defense, but the district court relied on that distinction alone to reject the testimony of Dr. Morrison. The use of that wording as a basis for rejecting her testimony would be questionable in any case, given that the clear import of Dr. Morrison's substantial testimony was that Matheney was unable to operate outside his delusion and therefore could not assist in addressing the real issues in the case. Nevertheless, even within that literal approach to testimony, the district court's holding cannot stand. First, Dr. Morrison in fact testified that Matheney was unable to rationally consult with his lawyers because the delusion that he maintained interfered with his ability to look at the realistic facts of the case and the reality of what was necessary for his defense. PCR at 1590. Additionally, even if the district court had been right in characterizing Dr. Morrison's testimony, that would have been a proper opinion of competency. In *Drope v. Missouri*, 420 U.S. 162, 171 (1975), the Supreme Court stated that "[i]t has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, *and to assist in preparing his defense* may not be subjected to a trial." [emphasis added]. Therefore, a defendant may not be subject to trial unless he can both consult with counsel and assist in preparing the defense, contrary to the district court's contention. *See also Matheney II*, 688 N.E.2d

at 899 ("A defendant is not competent to stand trial when he is unable to understand the proceedings and assist in the preparation of his defense. Ind.Code Ann. § 5-36-3-1(a) (West 1986).") Because the district court relied on an unsupported legal distinction in rejecting the only psychiatric testimony on the issue of Matheney's trial competence, its decision is erroneous as a matter of law.

In conclusion, the testimony in the record by Matheney's attorneys, his trial investigator and the psychiatrists provide significant, even overwhelming, evidence that he was unable to rationally consult with them and assist in his defense. The post-conviction court's reliance on isolated statements by one attorney to find competence is against the clear weight of the evidence. That court failed to reconcile its holding with the consistent testimony of that attorney, co-counsel, the investigator and the psychiatrist that Matheney was unable to assist counsel on any legitimate issues in that case. The trial attorneys in fact recognized that Matheney's competence was at issue, but failed to follow through at trial. Moreover, their testimony on post-conviction revealed their misunderstanding as to the standards of competency, with a belief that he was competent if he could understand the nature of the proceedings, even though he was totally incapable of assisting them on the legitimate issues in the case. Matheney has met the *Strickland* standard, demonstrating a "reasonable probability" that the result would have been different if his attorneys had pursued the competency issue, and accordingly I disagree with the majority's conclusion that the prejudice prong of *Strickland* was not met. Therefore, I respectfully dissent.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*