**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 18, 2014
Decided December 5, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-2561

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 11-cr- 644-2 |
| BERNARDO TELLEZ, | |
| *Defendant-Appellant*. | James B. Zagel, *Judge*. |

**O R D E R**

Bernardo Tellez, a native of Mexico whose primary language is Spanish, was pulled over after law enforcement officers saw him carry into his van a bag believed to contain drugs. After a short conversation in Spanish with an officer, Tellez told the officer that he speaks English, and he received *Miranda* warnings in English. Tellez then incriminated himself but later moved to suppress those statements, arguing that his limited command of English prevented him from comprehending the warnings. After the district court denied that motion, Tellez entered a conditional plea of guilty and now appeals. Because the district court did not clearly err in concluding that Tellez understood the warnings, we affirm.

During an investigation, which included intercepted phone calls, into drug trafficking in Chicago, agents of the Drug Enforcement Administration learned that Tellez's cousin had arranged to deliver heroin. The agents wanted to see the delivery. They watched the cousin's residence and saw Tellez and his cousin leave the home, get into a van, drive a short distance, and return to bring into the home a red duffel bag. Later that day Tellez left the residence carrying two duffel bags, one of which was red, and returned to the van. The agents stopped Tellez for a traffic violation after he drove a few blocks.

Because the intercepted calls were in Spanish, the agents first determined whether to speak to Tellez in Spanish or English. One agent, a fluent Spanish-speaker, identified himself and, in Spanish, asked Tellez if he could search the vehicle. Tellez answered "yes" in English. The agent then asked, again in Spanish, if Tellez had any guns in the car, and Tellez responded in English, "Guns? No." The agent then asked Tellez in Spanish if he spoke English, and Tellez nodded his head. This exchange lasted about a minute.

Next, a second agent informed Tellez, in English, of his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966). He paused after reciting each right to ask if Tellez understood each one. Answering in English after each pause, Tellez answered "yes" or otherwise told the agent that he understood each right. The agent then asked Tellez if he was willing to answer questions, and Tellez replied, "yes."

The second agent then interrogated Tellez. In response to questions about the contents of the duffel bags, Tellez initially gave one-word answers such as, "drugs," or "illegal." But Tellez later gave more detailed answers to questions about the drug transaction. He explained how he got the drugs and what he was supposed to do with them. Tellez also signed a form in English granting consent to search his home, and he provided biographical information in English. Based on his answers and other evidence, Tellez was indicted with two counts of possessing heroin with intent to distribute. *See* 21 U.S.C. § 841(a)(1).

Tellez moved to suppress his post-arrest statements. He argued that he did not waive his *Miranda* rights knowingly and intelligently because agents recited his rights in English, a language that he does not understand. The court held a suppression hearing at which it considered evidence of his English-language deficiency. First, Tellez's neighbor, who has known him for 15 years, testified that she regularly speaks

with Tellez in Spanish and that Tellez knows "hardly any" English. She acknowledged, though, that she has overheard Tellez use some English on the telephone with his boss (a carpet installer). Second, Tellez's attorney pointed out that Tellez used an interpreter during court proceedings and conversations with her and the pretrial detention staff. Then the government offered evidence in rebuttal. The arresting agents testified how during the arrest Tellez told them that he understands English. The prosecution also submitted summaries of two interviews with detention staff who stated that they had conversed with Tellez in English. And the government furnished a letter, written in English and signed by Tellez, requesting access to the prison library.

The district court denied the motion, finding that Tellez understood the English-spoken warnings that he could remain silent and request a lawyer. The court agreed with Tellez that his understanding of English is limited, but concluded that he knew enough English to understand the *Miranda* warnings. The court explained that the warnings are simple, Tellez had lived in the United States for 15 years at the time of his arrest, and Tellez gave English responses to all questions, even those posed in Spanish. Tellez reserved his right to appeal the court's ruling and entered a conditional plea of guilty to one count of possessing heroin with intent to distribute. *See* 21 U.S.C. § 841(a)(1). Tellez was sentenced to 70 months in prison.

On appeal Tellez principally argues that he did not knowingly waive his *Miranda* rights. He contends that the district court erred by overestimating his understanding of English based on a short conversation (a minute or less) of simple, "leading" questions producing mainly one-word responses that did not probe Tellez's comprehension of English.

A waiver of *Miranda* warnings must be both knowing and voluntary. *See Miranda*, 384 U.S. at 444; *United States v. Vallar*, 635 F.3d 271, 284 (7th Cir. 2011). To decide if his waiver was knowing, the district court had to determine if Tellez knew enough English to understand what a lawyer is and that he could refuse to talk to the agents or stop the questioning. *See Moran v. Burbine,* 475 U.S. 412, 422–23 (1986); *Collins v. Gaetz*, 612 F.3d 574, 588 (7th Cir. 2010); *Young v. Walls*, 311 F.3d 846, 850 (7th Cir. 2002). We review de novo the district court's conclusion that Tellez's waiver was voluntary, but its credibility determinations about historical facts are reviewed for clear error. *United States v. Jackson*, 300 F.3d 740, 748 (7th Cir. 2002); *United States v. Brooks*, 125 F.3d 484, 491 (7th Cir. 1997).

For three reasons the record supports the district court's finding that Tellez

understood enough English to waive his *Miranda* rights intelligently. To begin, when the first arresting agent questioned him in Spanish, Tellez both answered in English and told him that he understood English. Second, after another agent recited each *Miranda* warning slowly in English, Tellez spoke to him, too, in English, and said that he understood the warnings and waived them. Third, he has lived in Chicago for 15 years, and his neighbor has heard him talk to his boss in English which implies that at least at his job he used and understood some English. Also, at times he communicated with prison staff in English, and gave detailed answers in English to open-ended questions from the arresting agents. Although Tellez may not be fluent in English, courts have concluded that English-spoken responses and English skills similar to Tellez's are sufficient to render a knowing waiver. *See, e.g., Perri v. Dir., Dep't of Corrs. of Ill.*, 817 F.2d 448, 449, 452 (7th Cir. 1987) (concluding that native Italian knowingly waived *Miranda* rights, even though he received warnings in an unfamiliar Italian dialect, because he responded in English that he understood them); *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127–28 (9th Cir. 2005) (ruling that Mexican national with English-language difficulties knowingly waived *Miranda* rights because he said that he understood warnings in English and officers could understand him); *United States v. Guay*, 108 F.3d 545, 549–50 (4th Cir. 1997) (French-speaking arrestee, who told officer that he could understand English if spoken slowly, knowingly waived rights); *Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989) (concluding that arrestee made knowing waiver despite broken English and occasional lapses into Spanish).

Tellez replies that the agents could have easily delivered the *Miranda* warnings in Spanish because Spanish-speaking agents were nearby. True, the government could have avoided the problem in this case if the agent who first approached Tellez and spoke to him in Spanish had also delivered the *Miranda* warnings in Spanish. But the availability of Spanish-language warnings does not affect the validity of Tellez's waiver because the agents need not have recited warnings in Spanish after they had determined that Tellez speaks intelligible English. *See Rice v. Cooper*, 148 F.3d 747, 750–51 (7th Cir. 1998).

Tellez's final argument hints that, apart from whether the waiver was knowing, it was not voluntary. He suggests that he answered all of the questions in English only because he felt vulnerable and during the arrest faced a "power imbalance." Tellez did not testify to these assertions in the district court or argue there that his waiver was involuntary; he argued only that his waiver was not knowing. So this new argument is forfeited. *See United States v. Sarraj*, 665 F.3d 916, 919 (7th Cir. 2012) (arguments not presented to district court are forfeited); *Judge v. Quinn*, 624 F.3d 352, 360 (7th Cir. 2010)

(same).

Because the record adequately supports the district court's conclusion that Tellez knew enough English to understand his *Miranda* warnings and waiver, the judgment is AFFIRMED.