In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-2929

TOD HARDING,

*Petitioner-Appellee,*

*v.*

JONATHAN R. WALLS,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 8211—**Matthew F. Kennelly**, *Judge.*

ARGUED MAY 17, 2002—DECIDED AUGUST 13, 2002

Before BAUER, POSNER and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner, Tod Harding, was convicted of murder and residential burglary in Illinois state court. Harding was sentenced to life imprisonment for the murder conviction and to a concurrent term of twenty-five years for the residential burglary conviction. Both convictions were affirmed on appeal, but his sentence for residential burglary was reduced to fifteen years. After exhausting all other state remedies, Harding sought habeas relief, claiming due process violations. The district court granted Harding's petition on one of the grounds raised therein: deprivation of due process due to the state's knowing use of perjured testimony and failure to correct such testimony. For the following reasons, we REVERSE the decision of the district court.

## Background

Harding was convicted for the murder of his mentally impaired paternal cousin, George Miller, and for the residential burglary of the Miller family home. At trial, one of Harding's cousins on his maternal side, James Harland, testified for the prosecution. Harland was a co-defendant who participated in the crime.

Harland's detailed testimony described the events that took place on the night of the murder. Among other things, Harland testified that Harding was at the scene of the crime and identified him as the man who shot Miller. In addition to these material facts, Harding contends that Harland offered perjured testimony during cross-examination and the prosecution was aware of the false testimony.

On cross-examination, the following exchange took place:

Q: Did your attorney tell you that the penalties would be different if you involved Todd [sic] or Gerald?

A: No, sir.

Q: Did anybody else tell you the penalties would be different if you testified?

A: No, sir.

Q: Why are you telling the jury that you have decided to testify and give this version today?

A: Because it just came to me that I had been arrested for a murder that I did not do. And, I—

Q: In Davenport, Iowa, the first day you were arrested, the police told you in the squad car they wanted the person who did the shooting. You admit that?

A: Right.

Q: You are—Are you saying that was never told to you again?

A: They could have said it. I really didn't pay too much attention. I was trying to listen to what they said. I didn't want to answer none of their questions until I had gotten a hold of my lawyer.

Q: In November of 1982, were you at the Miller residence?

A: Yes.

Q: That was the occasion you went hunting out there?

A: Yes.

Q: Have you been promised anything in return for your testimony?

A: No, sir.

Q: Have you asked for anything in return for your testimony?

A: No, sir.

Q: That is you asked your attorney if you will get anything in return for your testimony?

A: Not really, no, sir.

Q: Well, not really, what have you asked him?

A: I just asked him, you know, you know, if I am going to get charged for a murder that I have not done.

Q: Do you think the murder charge is going to be dropped against you in return for your testimony?

A: No, sir.

Q: Is that what you are testifying?

A: No, sir.

R. 28-2, at 337-39. Harding argues that Harland lied when asked by defense counsel about whether he had asked for

or otherwise been promised consideration in return for his testimony.

In the post-conviction trial court, Harding filed an affidavit signed by Harland in which Harland states that he discussed his case with his attorney and the prosecutor prior to trial. The affidavit also states that, during those discussions, Harland was reassured that testifying against Harding would benefit his own case. In response, the state filed affidavits of both the trial prosecutor and Harland's defense counsel, attesting to the fact that Harland received no promises nor were there any agreements for a charge reduction or an agreed sentencing term prior to Harland testifying.

In granting the prosecution summary judgment on Harding's post-conviction petition, the state trial court found that Harland's affidavit failed to raise a genuine issue of material fact and that the jury would not have reached a different verdict had they known Harland expected something in return for his testimony. The Illinois Appellate Court affirmed, noting the vagueness of Harland's testimony, and further stating that the absence of any *quid pro quo* agreement left Harland with only the hope of receiving beneficial treatment in exchange for his testimony.

The district court disagreed with the conclusions reached by the Illinois courts, finding: (1) that Harland did lie about whether he had asked for or otherwise been promised consideration in return for his testimony; (2) that the prosecutor knew Harland lied; and (3) that the prosecution's error in failing to correct Harland's perjured testimony was not harmless. Based on these findings, the district court granted Harding habeas relief.

**Discussion**

We review the district court's factual findings for clear error and legal conclusions as well as mixed questions of law and fact *de novo. Kapadia v. Tally*, 229 F.3d 641, 644 (7th Cir. 2000); *Kavanagh v. Berge*, 73 F.3d 733, 735 (7th Cir. 1996).

Habeas relief may be granted if a state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[1]

With respect to section 2254(d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). The *unreasonable* application of federal law, however, is different from the *incorrect* or *erroneous* application of federal law. *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001) (citing *Williams*, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief. Under section 2254(d)(2), relief may be had where the petitioner can show by clear and convincing evidence that the state

---

[1] Respondent spends some time briefing the propriety of the district court's apparent reliance on both sections 2254(d)(1) and 2254(d)(2). No examination of this issue is necessary as neither section affords habeas relief to Harding. The decision of the Illinois Appellate Court was reasonable as a matter of law and fact.

court's factual determinations were unreasonable. 28 U.S.C. § 2254(e)(1). Even if the petitioner demonstrates constitutional error under section 2254(d)(1) and/or section 2254(d)(2), he or she still may not be entitled to habeas relief where such error is deemed harmless; that is, could not have had a substantial and injurious effect or influence on the jury's verdict. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (citations omitted).[2]

It is well established that the introduction of perjured testimony, without more, does not rise to the level of a constitutional violation warranting habeas relief. *Tayborn v. Scott*, 251 F.3d 1125, 1130 (7th Cir. 2001). A habeas petitioner seeking a new trial on the ground that the prosecutor used perjured testimony must establish "(1) that the prosecution indeed presented perjured testimony, (2) that the prosecution knew or should have known of the perjury, and (3) that there is some likelihood that the false testimony impacted the jury's verdict." *Id.* (quoting *United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir. 1997)).

Here, the district court found that the Illinois Appellate Court's determination that Harland did not perjure himself was unreasonable in light of the evidence presented. We disagree. After reviewing the testimony at issue, the state court opined, "We cannot, on the basis of the State's Attorney's ephemeral promise and Harland's vague testimony, conclude that the State obtained the

---

[2] We say *may* not be entitled to habeas relief because there is some question whether the harmless error standard articulated in *O'Neil* has survived the passage of the AEDPA. *See Anderson v. Cowan*, 227 F.3d 893, 898 n. 3 (7th Cir. 2000) (discussing divergence between circuit courts questioning application of the *O'Neal* standard post-AEDPA). We need not address the viability of the *O'Neal* standard, as Harding fails to demonstrate any constitutional error in the first place.

defendant's conviction by knowingly using perjured testimony." While the district court may legitimately disagree with this conclusion, it is not unreasonable in light of the record.

In rejecting the arguments that Harland falsely stated that he was not promised anything nor asked for anything in exchange for his testimony, the state court noted that no *quid pro quo* agreement existed between Harland and the prosecution. The court further noted that the prosecution in fact refused to negotiate with Harland, leaving him with only the hope that his testimony would result in the benefit of leniency. The affidavits filed by Harding in his post-conviction proceedings support these findings.

As previously set forth, Harland's affidavit averred that he discussed his case with his attorney and the prosecutor prior to trial and that, during those discussions, he was "reassured" that his testifying against Harding would benefit his own case. Additionally, the affidavits of the prosecutor and defense counsel both state unequivocally that Harland received no promises or any agreements for a charge reduction or an agreed sentencing term prior to testifying against Harding. The affidavit of Harland's defense attorney attested to the fact that the prosecutor refused to negotiate a plea in exchange for testimony. Mere reassurances given outside the realm of negotiations hardly qualify as a definitive request or promise for beneficial consideration. Indeed, as the respondent points out, such reassurances reflect that Harland was simply advised of the reality that cooperating with the prosecution might benefit him at a future date. Absent anything more, it is not at all unreasonable to conclude that Harland testified truthfully since he had nothing more than a common sense hope that his testimony might be beneficial to his own case.

Because we find that the state court's determination that Harland did not commit constitutional error by perjuring himself was reasonable, we need not reach the intertwined issues of harmless error and impact on the jury.

## Conclusion

The decision of the district court conditionally granting the petitioner, Tod Harding, habeas relief is REVERSED and REMANDED with instructions to deny the prayed for writ.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*