NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 9, 2007
Decided January 31, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. TERENCE T. EVANS, Circuit Judge

No. 06-2066

| | |
|---|---|
| FELICIANO T. DOUGLAS, | Appeal from the United States District |
| *Petitioner-Appellant,* | Court for the Western District of Wisconsin. |
| *v.* | No. 05 C 373 |
| PHIL KINGSTON, | Barbara B. Crabb, |
| *Respondent-Appellee.* | *Chief Judge.* |

**O R D E R**

In 2001, following a jury trial in the circuit court of Rock County (Wisconsin), Feliciano Douglas was convicted of two counts of second degree sexual assault, contrary to Wisconsin Statute § 940.225(2)(a). The charges grew out of the same episode: Douglas, on two occasions during the evening and early morning hours of June 29, 2000, forced Dena Solchenberger to service him with oral sex to which she did not consent.

After he was convicted, Douglas moved the circuit court for a new trial, arguing that members of the jury received extraneous, and prejudicial, information--that he was in custody on other charges during his trial. The circuit judge (Daniel T. Dillon), in a thorough, 11-page (single-spaced!) decision, denied Douglas's motion.

Douglas appealed to the Wisconsin Court of Appeals, without success.  He then petitioned the Wisconsin Supreme Court for review, but it declined to hear his case.

Douglas then filed a petition for writ of federal habeas corpus pursuant to 28 U.S.C. § 2254.  The district court (Chief Judge Barbara Crabb presiding) denied the petition.  Douglas's appeal of that decision is before us today.

While waiting for his trial on the sexual assault charges to begin, and while awaiting sentencing on an unrelated drug conviction, Douglas was incarcerated in the Rock County jail.  At a pretrial hearing, Judge Dillon ruled that, unless Douglas testified, the state could not introduce at trial any evidence of his drug dealing and prior criminal history, with the exception of what Solchenberger might say regarding her personal knowledge of Douglas's criminal activities on the night they were together.

Eventually, a jury of 12 (and one alternate) was empaneled to hear the case. One of the jurors, Amanda Hornung, was employed in the Rock County sheriff's department as a corrections officer in the jail division.  During voir dire, Hornung testified that she was not acquainted with Douglas.  She said, "I think I could be fair and impartial."  Hornung became the focus of the post-trial events that were to unfold a year later.

During the trial, Solchenberger testified about the two sexual assaults and the events that occurred before and after.  She provided details of each assault, as well as details of Douglas's drug-dealing activities on the night of the assaults. Douglas did not testify in his own defense.

Almost one year after the trial, Douglas filed a motion for postconviction relief, alleging that during deliberations, juror Hornung told other jurors that he (Douglas) was being held in the Rock County jail on unrelated charges.

At the postconviction hearing on Douglas's motion, all 13 jurors testified. While waiting their turn to testify at the hearing, most of the jurors sat in a room together for approximately 4 hours.  When called to testify, several jurors stated that, while waiting, they discussed Douglas's trial with other waiting jurors and that they tried to remember collectively what had or had not been discussed during their deliberations.

The result of the post-trial hearing was that (1) Hornung denied telling anyone during the trial that Douglas was in custody; (2) two jurors--Linda Schwab and Connie Brown--testified that they heard Hornung say Douglas was in custody;

and (3) the other 10 jurors said they heard nothing of the sort.  Extended excerpts from the testimony of each juror are noted in both Judge Dillon's and Judge Crabb's decisions.  We will not repeat that testimony here.

In his opinion after the post-trial hearing, Judge Dillon observed:

> The idea of different witnesses to a discussion telling entirely different versions under oath about what they said and heard leaves the unsettling sense that the truth will never really be known for certain.  Nor will there be an explanation of why the narrators would see the incident in such starkly different ways.  In resolving the issue, the court need not assign blame, or find that one juror is lying and another telling the truth.  The core decision the court must make after weighing the testimony is whether the defendant has met his burden of proof.

In light of the conflicting testimony presented, the court concluded that the defendant had not proven by clear, satisfactory, and convincing evidence that the allegedly extraneous information had been introduced to the jury.  Later, the judge went on to note that he was

> satisfied that jurors Michael Bellcour, Jodi Brown, Richard Carey, Gary Allan, Gerald Amundson, Mark Warner, Donna Risseeuw, William Bladon, George Brunett, Chad Sisko, and Amanda Hornung all testified truthfully and accurately about what happened in the jury deliberations.  In particular, there is great credibility in the collective testimony of jurors Allan, Risseeuw, Bladon, Brunett and Sisko, who each spoke with a high degree of certainty and precision.  Their answers corroborate each other. . . .  By contrast, the recollections of Connie Brown and Linda Schwab as to what happened in the jury deliberations are simply less credible.

On appeal, the Wisconsin Court of Appeals affirmed Judge Dillon, stating:

> On appeal, Douglas makes some very reasonable arguments why a court could have made a different credibility determination.  However, it is well established

that credibility determinations are for the circuit court.
Therefore, we accept the court's finding.

The court went on to conclude that even if the extraneous information had been conveyed to the jury, it was not prejudicial, because

> we do not regard it as likely that the jurors in this case
> would have been more inclined to convict Douglas
> [because he was incarcerated on other charges] because
> they did not know the other reason why Douglas was in
> jail. . . . [T]he jury was more specifically aware of other
> prejudicial acts by Douglas that are not challenged on
> appeal. These include Douglas's statement to the victim
> that he was "a drug dealer" and the victim's observation
> that Douglas appeared to be in possession of cocaine.

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides, in relevant part, that habeas relief may be granted only when a state court's adjudication of a petitioner's claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In Williams v. Taylor, 529 U.S. 362, 410 (2000), the Court emphasized that an unreasonable application of federal law is different from an incorrect application of federal law. Before a federal court can issue a writ of habeas corpus, it must determine that a state court decision was both incorrect and unreasonable. Rompilla v. Beard, 125 S. Ct. 2456, 2462 (2005).

The Due Process Clause of the Fourteenth Amendment requires "a jury that determines guilt on the basis of the judge's instructions and the evidence introduced at trial, as distinct from preconceptions or other extraneous sources of decision." Oswald v. Bertrand, 374 F.3d 475, 477 (7th Cir. 2004). If, in reaching its verdict, Douglas's jury received extraneous information that had a substantial and injurious effect on him, he would be entitled to a writ of habeas corpus. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). However, before he can even begin to demonstrate that he was prejudiced by extraneous information, Douglas must first establish that improper information was introduced to the jury. This he has not done.

Federal courts must begin their analysis of any habeas petition with the state court's determinations of fact. Williams, 529 U.S. at 386. When a state court makes findings of fact that obviate the need to rule upon the substantive merits of a

claim, the AEDPA circumscribes federal court review of those factual determinations. Conner v. McBride, 375 F.3d 643, 655 (7th Cir. 2004). A federal court's mere disagreement with a state court's determination of the facts is not a ground for relief. Rather, pursuant to § 2254(e), the state court's findings of fact are presumed correct, and it is the petitioner's burden to show by clear and convincing evidence that the state court's factual determinations are incorrect and unreasonable. Harding v. Walls, 300 F.3d 824, 828 (7th Cir. 2002). That is a heavy burden to carry.

Douglas essentially raises two challenges to the state court's findings of fact. First, he asserts that Judge Dillon actually made no credibility determinations and therefore did not find the facts relevant to his case. He argues that the statement in the court's opinion that "the court need not assign blame, or find that one juror is lying and another telling the truth," means the judge didn't make a definitive factual finding. Judge Crabb found this argument to be "pure casuistry." We agree. After having heard the testimony of all 13 jurors, the state judge clearly held that Brown's and Schwab's testimony was not consistent and was "simply less credible" than the testimony of the remaining jurors. Although the judge did not rule explicitly that Brown or Schwab were "lying," he did find that "jurors Michael Bellcour, Jodi Brown, Richard Carey, Gary Allan, Gerald Amundson, Mark Warner, Donna Risseeuw, William Bladon, George Brunett, Chad Sisko . . . all testified truthfully and accurately about what happened in the jury deliberations" when they denied having knowledge of the petitioner's incarceration on unrelated charges. Also, by choosing to believe Hornung's testimony, the judge rejected the possibility that she revealed extraneous information to jurors Brown and Schwab. So the judge made a clear finding of fact--the credibility of the witnesses in this case--and we can't disregard that finding on this collateral review.

It is not surprising that, when reconvened 15 months after Douglas's trial for a postconviction hearing, the jurors testified about some facts that were contradictory. But the most likely explanation for these contradictions is not a "grand conspiracy," as Douglas suggests, but rather the natural disintegration of the memory of an event that occurred a long time ago.

Several jurors testified that they formed a belief that the petitioner was in custody because of the number of guards present in the courtroom or because of delays in returning the petitioner to the courtroom following recesses. It is well within the realm of possibility that jurors Brown and Schwab formed a similar belief and attributed their knowledge to the wrong source. Of course, the reverse scenario is possible as well. Perhaps other jurors learned of the petitioner's incarceration from juror Hornung and misattributed their knowledge to other

inferences they had drawn.  Regardless, in concluding that the testimony of the vast majority of jurors was more credible than the testimony of jurors Brown and Schwab, the state trial judge did not act <u>unreasonably</u> within the meaning of 28 U.S.C. § 2254(e).

Therefore, because Douglas has not rebutted the presumption in favor of the trial court's finding that no extraneous information reached the jury, we, like the district court, need not decide whether such information would have prejudiced him.

The judgment of the district court is AFFIRMED.