In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-3552

JOSEPH F. RIZZO, JR.,

*Petitioner-Appellant,*

*v.*

JUDY P. SMITH, Warden,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 C 563—**Patricia J. Gorence,** *Magistrate Judge.*

_____

ARGUED APRIL 10, 2008—DECIDED JUNE 9, 2008

_____

Before FLAUM, KANNE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Almost a decade ago, Joseph F. Rizzo, who was 58 years old at the time, was convicted, after a jury trial in the Circuit Court of Kenosha County, Wisconsin, on several counts of having sexually assaulted a child. He was sentenced to serve a term of 65 years.

After his conviction, Rizzo embarked on an appellate route that took him first to the trial court on post-trial motions, then to the Wisconsin Court of Appeals which granted his request for a new trial, then to the Wisconsin Supreme Court which affirmed in part and remanded in

part, then back to the trial court which denied relief, then back to the state appellate court which affirmed the denial of relief, then back to the state supreme court which declined to consider the case again, and then to the United States District Court for the Eastern District of Wisconsin where Rizzo's request for federal habeas relief was denied. In 2007, the case arrived here on Rizzo's appeal from the order of the district court.

In his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, Rizzo argued that the state trial court's denial of his requests for access to the complainant's treatment records and for an independent psychological examination of the complainant violated his constitutional rights to due process and to confront and cross-examine his accusers. He also maintained that the state supreme court and state court of appeals' decisions denying him relief were unreasonable. The federal district court (Magistrate Judge Patricia J. Gorence, sitting with the parties' consent) disagreed and denied Rizzo's petition in a comprehensive 32-page memorandum and order. We start our review with the facts.

In late 1995, the parents of a 14-year-old girl, we'll call her "Daphne," asked Rizzo, a neighbor and family friend who had previously helped them with marital problems, to counsel their daughter about various personal and disciplinary problems she was having. In May 1996, Daphne told her parents that Rizzo touched her inappropriately during their counseling sessions; the sessions were immediately cancelled. Around the same time, Daphne began seeing Dr. Linda Marinaccio Pucci, a clinical psychologist. Dr. Pucci testified that, during their fifth therapy session, Daphne told her that, until recently, an adult had been "messing with her" but that she would not

disclose further details. Daphne returned to Dr. Pucci in the summer of 1997 for additional therapy, at which point both Daphne and her parents told Dr. Pucci that Daphne had been molested by a neighbor. Daphne and her family eventually reported Rizzo's alleged misconduct to the police in June 1997. As investigation ensued and state criminal charges were filed.

Before trial, Rizzo motioned the court to conduct an *in camera* review of Dr. Pucci's reports and records. In response, the State provided a six-page summary prepared by Dr. Pucci, explaining her knowledge of the case and treatment of Daphne. The State also agreed that the trial court could conduct an *in camera* review of Dr. Pucci's records concerning Daphne to determine if they contained exculpatory information. After reviewing the records, the state trial judge (Michael S. Fisher) denied Rizzo access to them, reasoning as follows:

> Well, very frankly, if you go through this entire file and you go through it essentially line by line, you won't find anything different than what you find in [Dr. Pucci's] summary. . . . [T]here is really no information that is contained in this file that you don't know about already that would be exculpatory in any way or even lead to anything that is exculpatory . . . .

Rizzo also filed a pretrial motion requesting that Daphne submit to an independent psychological examination. At a subsequent hearing, Rizzo's counsel explained that he asked for the examination because the State would be eliciting expert testimony from Dr. Pucci "concerning the issues that would be relevant to an independent fact finder's evaluation of whether [or] not a person is a victim of a sexual assault." As a result, he said, "the predicate is laid based on the *Maday* criteria for the Court

to order the alleged victim make herself available for independent psychiatric evaluation."[1] The prosecutor responded that, while the State had initially intended to elicit such evidence from Dr. Pucci, it decided not to. Specifically, the prosecutor stated that the State did "not intend on direct examination, subject to the defense opening the door based on cross-examination, [to] elicit expert *Jensen* type testimony from Dr. Pucci."[2] Accordingly, the judge concluded that Rizzo was not entitled to the requested psychological examination of Daphne.

At trial, Dr. Pucci gave extensive factual testimony with regard to her knowledge and treatment of Daphne. Following this testimony, Dr. Pucci and the prosecutor had the following exchange:

> Q   Do you have an opinion to a reasonable degree of psychological certainty why someone would,

---

[1] *State v. Maday*, 507 N.W.2d 365 (Wis. Ct. App. 1993), held that "[w]hen the state manifests an intent during its case-in-chief to present testimony of one or more experts, who have personally examined a victim of an alleged sexual assault, and will testify that the victim's behavior is consistent with the behaviors of other victims of sexual assault, a defendant may request a psychological examination of the victim. A defendant making such a request must present the court with evidence that he or she has a compelling need or reason for the psychological examinations." *Id.* at 372.

[2] "*Jensen*" evidence refers to the decision in *State v. Jensen*, 432 N.W.2d 913 (Wis. 1988), which held that a trial court "may allow an expert witness to give an opinion about the consistency of a complainant's behavior with the behavior of victims of the same type of crime only if the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 920.

> in this position, would not immediately report a crime like this?

> A   Often people are reluctant to report this kind of crime because of threats the offender or the abuser makes to them about it, either directly telling them not to tell or threatening them if they do tell. Often people are embarrassed. They may be afraid that they are not going to be believed. Sometimes they have some positive feelings about the abuser and may not want to get that person into trouble. Those tend to be the most common reasons.

Rizzo objected to this evidence and renewed his request for Dr. Pucci's treatment records. The judge overruled the objection and denied the request for the records. The jury subsequently convicted on all counts; Rizzo appealed.

In the state court of appeals, Rizzo argued, among other things, that the trial court's refusal to (1) require the State to produce Dr. Pucci's treatment records for Daphne and (2) require Daphne to submit to an independent psychological examination violated his constitutional rights. The court of appeals agreed that the trial judge should have granted Rizzo access to Daphne's treatment records. It also agreed that the State had reneged on its pretrial representation that it would not present *Jensen* evidence, thus precluding a "level playing field" as required under *Maday*. As a result, the court of appeals reversed the conviction and remanded for a new trial. The State appealed, and the state supreme court agreed to review the case.

The state supreme court reversed on the issue of access to the treatment records. It concluded that, under *State v. Shiffra*, 499 N.W.2d 719 (Wis. Ct. App. 1993), Rizzo was

only entitled to an *in camera* review of confidential treat-
ment records, which he received. Rizzo's position that
he was entitled to the records to effectively cross-examine
Dr. Pucci, the court said, "is in stark contrast to the in
camera procedure under *Shiffra*, which specifically bal-
anced the victim's interest in confidentiality against the
constitutional rights of the defendant." *State v. Rizzo*, 640
N.W.2d 93, 107 (Wis. 2002). Regarding the psychological
examination, however, the court agreed that the State
introduced *Jensen* testimony through an expert after
representing that it would not do so. Thus, Rizzo was
deprived of his right to a pretrial determination under
*Maday* as to whether there was a "compelling need" for an
independent examination of Daphne. But the court con-
cluded that giving Rizzo a new trial was premature
because his constitutional rights were violated only if
he was actually entitled to the examination. For that
reason, the case was remanded to the trial court for an
answer to that question.

On remand, Rizzo sought a ruling that he was entitled
to an independent psychological examination, access to
Dr. Pucci's treatment records, and a new trial. In support
of his motion, Rizzo submitted an affidavit from Dr. Marc
Ackerman, a psychologist whom he retained. Dr.
Ackerman also testified at the evidentiary hearing held
on remand. The trial judge ultimately denied Rizzo's
motion in full. Specifically, the judge found that Dr. Pucci's
*Jensen* testimony was confined to delayed reporting and
that Dr. Ackerman's testimony established that he could
offer an opinion concerning the delayed reporting aspects
of the case without conducting a psychological examina-
tion of Daphne.

Rizzo, as we noted earlier, appealed again, and this
time he struck out. The state court of appeals affirmed,

holding that the State's *Jensen* evidence was confined to delayed reporting and that Rizzo did not demonstrate a "compelling need" for the psychological examination under *Maday*. The court noted that Rizzo had not pointed to any statement by Dr. Ackerman that he required a personal interview with Daphne to rebut the State's *Jensen* testimony. In addition, the court found that "on cross-examination, Dr. Ackerman essentially conceded that he could assess the delayed reporting aspects of the case without conducting a personal interview." *State v. Rizzo*, 672 N.W.2d 162, 169 (Wis. Ct. App. 2003). The state supreme court declined to review the case a second time.

Having exhausted his state court remedies, Rizzo petitioned the federal district court for a writ of habeas corpus. Judge Gorence determined that the decisions of the state courts were not unreasonable applications of clearly established Supreme Court precedent and therefore denied the writ. But the judge certified two issues for our review: (1) whether the state supreme court unreasonably applied clearly established Supreme Court precedent when it determined that the nondisclosure of Dr. Pucci's treatment records for Daphne did not violate Rizzo's right to confront and cross-examine Dr. Pucci; and (2) whether the state court of appeals unreasonably applied clearly established Supreme Court precedent when it determined that Rizzo was not entitled to an independent psychological examination of Daphne.

We review the district court's findings of fact for clear error and its legal conclusions, as well as mixed questions of law and fact, *de novo*. *Harding v. Walls*, 300 F.3d 824, 827 (7th Cir. 2002). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may

issue a writ of habeas corpus only if the decision of the last state court to examine the merits of the petitioner's claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Rizzo first contends that the state supreme court unreasonably applied clearly established Supreme Court precedent when it determined that the nondisclosure of Dr. Pucci's treatment records for Daphne did not violate his right to confront and cross-examine Dr. Pucci. In his brief, Rizzo claims violations of both his Sixth and Fourteenth Amendment rights but stops short of stating which Supreme Court case provides clearly established precedent for his position. In the district court, the parties agreed that a request for disclosure of privileged records is governed by *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). Because *Ritchie* is the only Supreme Court case cited by Rizzo that involves disclosure of privileged records, we will examine his claim under its precedent.

In *Ritchie*, the defendant was charged with sexually assaulting his 13-year-old daughter. During pretrial discovery, Ritchie requested access to the counseling files maintained by a child protective agency concerning his daughter. He argued that disclosure of the files was necessary because it might aid in his defense, perhaps revealing statements his daughter made to the agency that were inconsistent with her trial statements, or show that she acted with an improper motive. The agency refused to comply with the request, claiming that the records were privileged, subject to specified exceptions.

The Supreme Court applied a Fourteenth Amendment due process analysis to Ritchie's claim and held that fundamental fairness required that he receive an *in camera* review of the records to determine whether they contained exculpatory information or information that would affect the outcome of the trial. The Court explained that, under the Fourteenth Amendment, "[i]t is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Id.* at 57. However, it reasoned that "[t]o allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the [State's] compelling interest in protecting its child-abuse information." *Id.* at 60. It concluded that an *in camera* review by the trial court balances the rights of the defendant in ensuring a fair trial and the needs of the State or the individual to keep those records private.

Although a majority of the Court found a due process violation, a plurality determined that the withholding of the confidential files did not amount to a confrontation violation. The plurality reasoned that "the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Id.* at 52. Consequently, "[t]he ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53. Justice Blackmun in concurrence (as well as Justices Brennan and Marshall in dissent) would have found a confrontation violation, but this view was not shared by any other concurring Justice. Thus, *Ritchie* is only "clearly established" federal law supporting a Fourteenth Amendment due process claim.

As we previously discussed, in rejecting Rizzo's position, the state supreme court relied on *Shiffra*, a case where the Wisconsin Court of Appeals applied *Ritchie* in establishing procedures for an *in camera* review of a complainant's confidential records. Thus, although the supreme court did not cite directly to *Ritchie*, it did apply *Ritchie*'s constitutional standard. So the question becomes whether the state supreme court's conclusion that Rizzo was not entitled to the treatment records for Daphne simply to impeach Dr. Pucci's credibility constituted an unreasonable application of *Ritchie*.

The state supreme court's conclusion was certainly reasonable. *Ritchie* says that due process requires confidential information that is potentially exculpatory to be submitted to the trial court for an *in camera* review. That's exactly what Rizzo got. The state trial judge conducted an *in camera* review of Dr. Pucci's files and found no exculpatory information. Indeed, the judge found that the information in Dr. Pucci's files did not include anything different than the six-page summary provided to Rizzo. Moreover, the *Ritchie* plurality flatly rejected the argument that a defendant is entitled to access confidential records simply to aid in cross-examination: "[T]he Confrontation Clause only guarantees 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* at 53 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). Because Rizzo has not identified any clearly established Supreme Court precedent supporting his claim, the state supreme court's decision was not unreasonable.

Rizzo also contends that the state court of appeals unreasonably applied clearly established Supreme Court

precedent when it determined that he was not entitled to an independent psychological examination of Daphne. In his brief, however, Rizzo fails to mention any Supreme Court decision that supports his position; instead, he relies almost exclusively on *Maday*. There, however, the Wisconsin court of appeals did draw on several Supreme Court cases, including *Chambers v. Mississippi*, 410 U.S. 284 (1973), and *Ake v. Oklahoma*, 470 U.S. 68 (1985), to justify its holding that a trial court has discretion to grant a motion for a psychological examination of a witness if a defendant demonstrates a "compelling need or reason" for it. *Maday*, 507 N.W.2d at 372. Moreover, in the district court, Rizzo claimed that the state court of appeals unreasonably applied *Chambers* and *Ake*.[3] Thus, although Rizzo did not explicitly renew his district court argument, we will assume that that is his contention on appeal.

In *Chambers*, the defendant was arrested for murder, but another person, Gable McDonald, made and later repudiated a confession. At trial, Chambers was not allowed to cross-examine McDonald because under Mississippi's "voucher" rule, Chambers vouched for McDonald's credibility after calling him as a witness. Chambers was also precluded on hearsay grounds from introducing the testimony of three people to whom McDonald had confessed. The Supreme Court held that the

---

[3] Rizzo also claimed that the state court of appeals unreasonably applied *Hicks v. Oklahoma*, 447 U.S. 343 (1980). *Hicks*, however, is not even cited in *Maday* and was not relied upon by the Wisconsin courts when they ruled on Rizzo's claims. Thus, we cannot accept that the state court unreasonably applied its principles.

exclusion of the evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied Chambers due process and a fair trial. The Court recognized that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers*, 410 U.S. at 294. But it also clearly stated that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 295.

In *Ake*, an indigent defendant on trial for murder raised an insanity defense and requested a psychiatric evaluation at state expense to determine his mental state at the time of the offense. The trial court denied the request, the jury convicted, and Ake was sentenced to death. The Supreme Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Ake*, 470 U.S. at 74. The Court recognized that "when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense," and noted that this "elementary principle" derives from the Fourteenth Amendment's due process guarantee of fundamental fairness. *Id.* at 76.

As we said, in rejecting Rizzo's claim, the state court of appeals relied on *Maday*. There, the Wisconsin court of appeals applied the general principles of *Chambers* and *Ake* in concluding that "[a] defendant who is prevented from presenting testimony from an examining expert

when the state is able to present such testimony is deprived of a level playing field." *Maday*, 507 N.W.2d at 370. As a result, *Maday* held that a trial court should grant a motion for an independent psychological examination of a complainant if a defendant demonstrates a "compelling need or reason" for it. *Id.* at 372. Thus, although the court of appeals did not cite directly to *Chambers* or *Ake*, it did apply the general constitutional principles of those cases to Rizzo's claims. So the question is whether the court of appeals' conclusion that Rizzo was not entitled to an independent psychological examination constituted an unreasonable application of *Chambers* and *Ake*.

The court's conclusion, we think, was entirely reasonable. *Chambers* and *Ake* say that a defendant's right to present evidence is not absolute and that states retain the right to establish criminal trial procedures. And *Maday* makes it clear that denying a defendant's request for an independent examination is within the discretion of Wisconsin trial courts unless a compelling need is shown. The state court of appeals ruled that the trial court properly exercised its discretion when it found that Rizzo had not demonstrated a compelling need for a psychological examination of Daphne. Specifically, the court of appeals held that "Rizzo failed to demonstrate that a psychological examination of the victim is necessary for his expert to develop opinion testimony that would counter the State's *Jensen* evidence concerning delayed reporting." *Rizzo*, 672 N.W.2d at 164. Rizzo characterizes this conclusion as "speculation and conjecture," but he ignores the fact that, on cross-examination, Dr. Ackerman admitted that he did not need to personally examine Daphne to opine as to why she would not immediately report a sexual assault. In light of this testimony, we cannot say

that the court of appeals' decision was an unreasonable application of established Supreme Court precedent.

For these reasons, the judgment of the district court denying the petition for a writ of habeas corpus is AFFIRMED.