In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3946

ANDREW SUH,

*Petitioner-Appellant,*

*v.*

GUY PIERCE, Warden,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:03-cv-07014—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED OCTOBER 20, 2010—DECIDED JANUARY 18, 2011

Before FLAUM, RIPPLE, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge.* Fifteen years ago, after a bench trial in the Circuit Court of Cook County presided over by Judge John Morrissey, Andrew Suh was convicted of first-degree murder and armed robbery and sentenced to consecutive terms of 80 and 20 years. In a state court petition for postconviction relief, Suh argued that his convictions and sentences were tainted, in violation of the due process clause, because Judge Morrissey had an undisclosed relationship with the family of the murder victim. The state courts denied Suh's petition. He then

sought a writ of habeas corpus in federal court, pursuant to 28 U.S.C. § 2254, but that petition was also denied. *See Suh v. Mote*, 2009 WL 3681645 (N.D. Ill. Nov. 3, 2009). Suh now appeals.

Notably, however, Suh now maintains that he is entitled to relief simply because the situation might have looked improper to an outside observer, despite the fact that Judge Morrissey was actually unaware of the relationship between his acquaintances and the murder victim when the case went to trial. The government, on the other hand, contends that this argument was not presented previously and that, in any event, it lacks merit. We begin with the facts as found by the state courts. *See* 28 U.S.C. § 2254(e)(1).

In late September 1993, Robert O'Dubaine was shot twice and killed as he entered the garage of his home in Chicago's Bucktown neighborhood. O'Dubaine lived in the home with his girlfriend, Catherine Suh, who is Andrew Suh's older sister. During a subsequent police interview, Catherine admitted to luring O'Dubaine into the garage for a waiting gunman. Catherine was arrested but fled after being released on bond. A jury later convicted her *in absentia* of first-degree murder and armed robbery. She was sentenced to life in prison.

Shortly after Catherine's arrest, Suh, a 19-year-old college student at the time, was interviewed by Chicago police. He eventually confessed to murdering O'Dubaine, explaining that his sister had repeatedly sought his help in a plan to kill O'Dubaine because he was physically abusing her and spending her money. When Catherine lured O'Dubaine into the garage, Suh, who had been

hiding there for some time, shot O'Dubaine twice in the head. Suh then took O'Dubaine's wallet and car, and drove away.

Suh appealed his convictions and sentences, advancing arguments that are not at issue here. The state appellate court affirmed the convictions but modified the sentences to run concurrently. The state supreme court denied leave to appeal. *People v. Suh*, 729 N.E.2d 503 (Ill. 2000). Suh then filed two postconviction petitions in state court, again making arguments that are not relevant here. The state appellate court affirmed the dismissals of both petitions, and the state supreme court denied leave to appeal. *People v. Suh*, 786 N.E.2d 197 (Ill. 2002).

In the meantime, Patrick Lavery, a playwright researching Suh's story, interviewed a nun, Sister Barbara McCarry, who had been the principal of Suh's grammar school and was knowledgeable about the case. According to Lavery, Sister McCarry said that the judge at Suh's trial (Morrissey), was close to the victim's family. A private investigation subsequently revealed that Judge Morrissey: (1) served on the Cook County First Municipal District Court from 1983 to 1988 with O'Dubaine's uncle, Judge John Divane; and (2) attended high school with William (Bill) Divane, the cousin of O'Dubaine's mother.[1]

---

[1] According to the private investigator, O'Dubaine was born "Robert Koron" and changed his last name to a Gaelic derivative of "Divane" several years before his death.

Suh then filed a third postconviction petition in state court, arguing that Judge Morrissey's ties to the family of the victim created a constitutionally impermissible potential for judicial bias. The state trial court denied Suh's request to use discovery to investigate the allegations, so his lawyers relied on evidence gathered through voluntary telephone interviews with Judge Morrissey and others.

In his interview, Judge Morrissey stated that he was unaware of any relationship between O'Dubaine and the Divane family. He said that William Divane was a casual friend, but he did not know that William was related to O'Dubaine. According to Suh's lawyers, Walter Morrissey (who, despite his name, is not related to the judge), a high school classmate of William Divane and Judge Morrissey, initially stated that those two men saw each other regularly and were long-time friends. The day after the interview, however, Walter called Suh's lawyers back and said that William actually had no relationship with Judge Morrissey.

Judge Morrissey also told the lawyers that Judge Divane never contacted him about Suh's case. Judge Divane was interviewed and agreed that he never spoke to Judge Morrissey about the case. In fact, Judge Divane said that he did not even know Judge Morrissey. And during her interview, Sister McCarry said that, contrary to Lavery's assertions, she had no knowledge of any connection between Judge Morrissey and the Divane family.

The state trial court denied Suh's petition, and he appealed. Although the discovery ruling was the

main focus of his appellate brief, Suh also argued that his petition should have been granted because "[t]he only reasonable inference from Judge Morrissey's close friendship with Bill Divane is that Bill Divane must have told Judge Morrissey of the murder of his cousin, and Judge Morrissey could not have failed to recognize that he was trying that case—Andrew Suh's case—in his courtroom." In affirming the denial of Suh's petition, the state appellate court cited both Illinois and United States Supreme Court case law on judicial bias but reasoned that, because Judge Morrissey "was unaware of any relationship between the victim and the Divane family," further discovery would have been futile, and "unfairness was not probable during [Suh's] trial."

In his petition for leave to appeal to the state supreme court, Suh repeated the arguments made to the state appellate court. The supreme court denied Suh's petition. *People v. Suh*, 875 N.E.2d 1122 (Ill. 2007). Suh then filed a federal habeas petition[2] in the district court and again requested permission to take several depositions. The district judge subsequently granted the request with respect to Judge Morrissey, Judge Divane, William Divane, and Sister McCarry.

The depositions were largely consistent with the earlier interviews. Sister McCarry admitted to meeting with

---

[2] Suh actually filed his federal habeas petition at the same time as his third postconviction petition in state court in order to comply with the applicable one-year statute of limitation. *See* 28 U.S.C. § 2244(d). The district judge then stayed the federal petition pending the resolution of the state petition.

Lavery and discussing Suh's case but she said she had no recollection of ever mentioning a connection between Judge Morrissey and the victim's family. Rather, Sister McCarry believed that Lavery was trying to discredit Judges Morrissey and Divane.

Judge Morrissey testified to being acquainted with Judge Divane, although their courtrooms were in separate buildings. Judge Morrissey estimated that he spoke to Judge Divane some five or ten times at judicial conferences between 1983 and 1988 and maybe at a dinner for judges. Judge Divane, however, testified that he could not recall ever meeting or speaking to Judge Morrissey and that he would not recognize him if they did meet.

Judge Morrissey also testified to being a casual acquaintance of William Divane. Both men said that they were high school classmates but not close friends and that they have met occasionally at high school reunions and charity functions. Judge Morrissey testified that he most recently spoke to William at a golf event in 2007, where they briefly discussed the investigation relating to Suh's 1995 trial. William Divane, however, testified that he could not recall whether he had seen Judge Morrissey after 2002 and that they never had a conversation about Suh.

Judge Morrissey lastly testified that, at the time of the trial, he did not know that either William or Judge Divane was related to O'Dubaine. He also said that he did not communicate with anyone from the Divane family, or anyone acting on the family's behalf, about the case before or during the trial.

After the depositions, Suh filed an amended petition with the district court. There, he argued that Judge Morrissey's connections to the family of the victim established an impermissible "appearance of bias" in violation of the due process clause. Specifically, he challenged the reasonableness of the state court's factual findings on the existence of a relationship between Judge Morrissey and the Divanes. He also argued that the state court unreasonably applied the law to the facts, speculating that the discrepancies among the testimony of Judge Morrissey and the Divanes indicated a cover-up:

> And the *only* reason for such conflicting testimony must be some attempt to downplay, or escape all together, the real nature or extent of the relationship. This, of course, leads to the conclusion that . . . the relationship must be one that rises to the level where the temptation to be bias [*sic*] either could—or did—affect Judge Morrissey's ability to be fair and impartial.

After summarizing the evidence, the district judge determined that: (1) the relationships were tangential and therefore would not require recusal under the due process clause; and, moreover, (2) no evidence suggested that Judge Morrissey even knew that his acquaintances were related to the victim, so the court would not presume an unreasonably high temptation for bias.

We review the district court's findings of fact for clear error and its legal conclusions, as well as mixed questions of law and fact, *de novo*. *Harding v. Walls*, 300

F.3d 824, 827 (7th Cir. 2002). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may issue a writ of habeas corpus only if the decision of the last state court to examine the merits of the petitioner's claim: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before we turn to the merits, however, there is a preliminary issue of procedural default. The government contends that the argument Suh is now making—namely, that due process required Judge Morrissey's recusal even though he was unaware of the connection between the Divanes and O'Dubaine—was never presented to the state courts. "Adequate presentation of a claim requires a petitioner to present both the operative facts and the legal principles that control each claim to the state judiciary." *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).

As we previously noted, Suh's argument today differs from the one he made in the state courts. In his state court appellate brief, Suh argued that his postconviction petition should have been granted because "[t]he only reasonable inference from Judge Morrissey's close friendship with Bill Divane is that Bill Divane must have told Judge Morrissey of the murder of his cousin." In other words, Suh maintained that there was actual bias,

or at least the *potential* for actual bias, because Judge Morrissey knew that O'Dubaine was related to Bill Divane as well as several other people he knew rather well. The appellate court accordingly determined that unfairness was improbable based, in part, on a factual finding that Judge Morrissey "was unaware of any relationship between the victim and the Divane family." Suh's petition for leave to appeal to the state supreme court repeated this argument.

Indeed, Suh persisted in this position before the district court. There, he argued that Judge Morrissey's connections to the family of the victim established an impermissible "appearance of bias" in violation of the due process clause. But by "appearance of bias," Suh was still referring to the potential for actual bias based on facts known to the judge at the time. He asserted that the conflicting deposition testimony indicated a cover-up, and therefore "the relationship must be one that rises to the level where the *temptation to be bias* [*sic*] either could—or did—affect Judge Morrissey's ability to be fair and impartial." (Emphasis added.) As a result, in rejecting Suh's petition, the district judge found that the evidence was insufficient to rebut the state court's factual finding that Judge Morrissey was unaware of the purported relationship. Under these circumstances, an unreasonably high temptation for bias could not be presumed.[3]

---

[3] Suh argues that the government waived its procedural default argument by not mentioning it in the district court. But

(continued...)

Now, on appeal, Suh has abandoned the argument that there was a cover-up and he does not dispute the state court's factual finding that Judge Morrissey was unaware of the relationship between the Divanes and O'Dubaine. Rather, he contends that the due process clause requires recusal—even in the absence of *any* potential for actual bias—where it might "appear" to an outsider that the judge had an interest in the outcome of the case. The distinction is critical because, as we'll discuss later in more detail, while disqualification is required based on an "appearance of bias" where there is a high risk of actual bias, without that risk disqualification is not necessary. Because Suh never presented the latter theory in state court, it is procedurally defaulted. *See Stevens*, 489 F.3d at 893-94 (refusing to consider a particular supporting argument that was not presented in state court).

But even assuming that we're splitting hairs and Suh's argument was preserved, it lacks merit.[4] Although

---

[3]  (...continued)

because Suh first advanced his modified "appearance of bias" argument on appeal, this is the government's first opportunity to challenge it. *See Jones v. Hulick*, 449 F.3d 784, 787 (7th Cir. 2006).

[4]  Suh argues that, because the state appellate court never adjudicated his "appearance of bias" claim, its decision is not entitled to any AEDPA deference. *See Harrison v. McBride*, 428 F.3d 652, 665 (7th Cir. 2005). Consistent with both Illinois and Supreme Court case law, the appellate court addressed

(continued...)

"[a] fair trial in a fair tribunal is a basic requirement of due process," *In re Murchison*, 349 U.S. 133, 136 (1955), "most matters relating to judicial disqualification d[o] not rise to a constitutional level." *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948). "Thus matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion." *Tumey v. Ohio*, 273 U.S. 510, 523 (1927). But recusal is required where the judge has "a direct, personal, substantial, pecuniary interest" in a case. *Id.*

In addition, the Supreme Court has identified certain, specific instances requiring recusal. One is "where a judge had a financial interest in the outcome of a case, although the interest was less than what would have been considered personal or direct at common law." *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2259-61 (2009) (citing *Tumey*, *Ward v. Monroeville*, 409 U.S. 57 (1972), and *Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813 (1986)). Another is "where a judge had no pecuniary interest in the case but was challenged because of a conflict arising from his participation in an earlier proceeding." *Caperton*, 129 S. Ct. at 2261-62 (citing *Murchison* and *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971)).

---

(...continued)

whether actual bias was "probable." But it did not pass on the argument Suh now advances because, as we just discussed, that argument was not presented previously. (Indeed, for this reason, Suh could not—and did not—argue in the district court that AEDPA deference was inapplicable.) In any event, we need not decide the issue because Suh's argument fails under any standard.

Recusal also may be required outside of these specific instances if the probability of actual bias is high enough. *See Caperton*, 129 S. Ct. at 2263-64 (requiring recusal where "a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent" because that situation involved "a serious risk of actual bias"). But the issue before us is not whether a potentially biasing influence was strong enough to be constitutionally intolerable. Rather, because Suh is not challenging the state court's factual finding that the judge was unaware of the relationship between his acquaintances and the murder victim, the only question is whether recusal was required in the absence of *any* possibility of actual bias—that is, based *solely* on how the situation might have "appeared" to an outside observer. The Supreme Court has never held, or even intimated, that the due process clause requires recusal under such circumstances, so we must answer the question in the negative.

Moreover, one of our own decisions has already addressed and rejected a very similar argument, albeit in a hypothetical:

> Suppose a judge does not know a close relative has a financial interest in a case he tries. To the outside observer aware of the interest but unaware of the judge's lack of knowledge, it would look bad for the judge to try that case. But if the judge does not even know about the relative's financial interest, how

> could he be tempted to undermine the case? And if
> no actual incentive exists for the judge to be biased—if
> the judge does not have reason to be partial—how
> could the judge's presiding over the trial deprive a
> party of his right to a fair trial before an impartial
> judge?

*Del Vecchio v. Illinois Department of Corrections*, 31 F.3d 1363, 1371 (7th Cir. 1994). Suh attempts to limit *Del Vecchio*[5] by seizing on general statements in our subsequent decisions about the "appearance of bias." *See, e.g.*, *Franklin v. McCaughtry*, 398 F.3d 955, 960-61 (7th Cir. 2005) ("[T]he Supreme Court has decided that . . . the appearance of bias violate[s] due process principles."); *Bracy v. Schomig*, 286 F.3d 406, 411 (7th Cir. 2002) ("[O]rdinarily . . . the appearance of bias is sufficient to disqualify a judge."). As made clear by the cases we cited for those propositions (*Tumey*, *Murchison*, *Lavoie*, etc.), however, by "appearance of bias," we meant situations in which there was at least some risk of actual bias based on facts known to the judge at the time.

Without any controlling case law in his arsenal, Suh relies on Supreme Court decisions involving the federal recusal statute, 28 U.S.C. § 455, which requires a judge to disqualify himself whenever "his impartiality might reasonably be questioned." Indeed, language from those

---

[5] Interestingly, Suh cited *Del Vecchio* approvingly in his district court brief. But, to repeat, there he was still arguing that Judge Morrissey must have been aware of the relationship between the Divanes and O'Dubaine.

decisions bolsters Suh's argument. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 (1988), for example, says that "[t]he judge's lack of knowledge of a disqualifying circumstance may bear on the question of remedy, but it does not eliminate the risk that 'his impartiality might reasonably be questioned' by other persons." But the fact remains that, there, the Court was interpreting § 455, not the due process clause. So *Liljeberg* and its progeny are not on point. *See Johnson v. Carroll,* 369 F.3d 253, 262 (3d Cir. 2004) ("*Liljeberg* neither holds nor suggests that an appearance of bias on the part of a federal judge, without more, violates the Due Process Clause."); *see also Davis v. Jones*, 506 F.3d 1325, 1336 (11th Cir. 2007) (collecting cases and finding that "the federal recusal statute establishes stricter grounds for disqualification than the Due Process Clause"). Left with no legal legs to stand on, Suh's petition cannot be granted.

For the foregoing reasons, the judgment of the district court is AFFIRMED.